## Cabarga *versus* Seeger.

1. In an action of *assumpsit* a declaration was filed containing the common money counts, and a bill of particulars was furnished a few months afterwards, which stated a claim for $1800, lent on or about the 7th April, 1842, and also on a promissory note by the testator dated 7th April, 1842, for the same amount, which it was alleged he promised to pay. The declaration was amended in November, 1849, by adding two counts, in one of which it was alleged that the testator was *drawer* of the note, and in the other, *endorser*: *Held*, that the cause of action stated in the original declaration and the additional counts being the same, the court was right in allowing of the amendment.

2. The fact of the note not being described in the general counts was no valid objection to its admission in evidence under the amended counts.

3. One called to prove the execution of an instrument said he knew the handwriting of the person whose name was signed to it from having witnessed his will; that he did not know that he had seen him write his name to the will, but that he either wrote it, or acknowledged it in his presence; and in relation to the instrument, said that to the best of his knowledge the signature was in the handwriting of the individual. *Held*, that this was sufficiently proved to be submitted to the jury.

4. Where the writing of an instrument is obscure, and testimony as to the proper translation of it is given, it being in a foreign language, and letters of the party who executed it, relating to the note and the transactions between the parties, being in evidence, it was proper for the court to submit to the jury whether the party subscribing the instrument, intended it as an original undertaking, or as a mere order to pay the note to which the instrument referred, and on the paper of which it was written.

5. Where a note was given in Cuba, and the judge instructed the jury that there was in the case sufficient evidence of the presentment of the note to the drawer, and of notice to the endorser of demand and refusal: *Held*, that in the absence of knowledge or evidence in the case as to the foreign law, this court cannot say that the court erred in such direction.

THIS case came up from the *Nisi Prius*.

It was an action brought to July Term, 1847, by Jose Cabarga *v.* C. F. Seeger and Henry Tilge, executors of the will of Charles Meyer, deceased.

The original declaration contained the common money counts, viz., counts for money "lent and advanced," "paid, laid out and expended" for defendant's use; also a count for "money had and received," and a count on an account stated. Before pleading, defendants entered a rule calling on plaintiff to furnish a bill

[Cabarga *v.* Seeger.]

of particulars, which was answered by furnishing what purported to be a copy of the Dr. side of an account current, containing among others, the following charge :—

To cash paid bill of exchange of 7th April, 1842, on D. Santiago, F. Goutier, and endorsed to my order, $1800.00

A further bill of particulars was afterwards furnished to defendant's counsel in the following words :—

" You will please to take notice that in addition to the several matters mentioned in the bill of particulars furnished you, plaintiff will give evidence and claim to recover the amount, eighteen hundred dollars, advanced or lent by plaintiff to decedent at Havana, on or about the 7th of April, 1842, with interest, that is, the interest allowed by the law of Havana, to wit, ten per cent. per annum. Also, a promissory note drawn by S. F. Goutier, in favor of the testator or order, dated Havana, April 7, 1842, for eighteen hundred dollars, payable eight months after date, together with the written agreement of said testator, dated same day, whereby the testator, in consideration of having received the amount thereof from plaintiff, promises to pay him said note; which amount, with interest as aforesaid, plaintiff will claim."

Issue was joined on these common and money counts immediately after the furnishing of the bill of particulars in January, 1848.

In November, 1849, the additional counts were filed, consisting of a count on a note dated April 7, 1842, for $1800, payable eight months after date, of which Carlos Meyer, the defendant, is averred to *be the maker*.

And a count on a like note made by Santiago F. Goutier, and *endorsed* by Carlos Meyer; on which issues were joined. Defendant's counsel excepted to the amendments.

On the trial, plaintiff claimed a balance due to him of about $1300, and among other things, offered in evidence the instrument of writing in Spanish, which was translated as follows :—

" I will pay in virtue of these presents in eight months, from this date to the order of Carlos Meyer, the quantity of 1800 silver dollars, value received, in specie which the said Meyer lent me without interest, and for account of which I gave him the instrument at Havana.

" 7th April, 1842.  S. F. Goutier."

" I will pay, (or let it be paid) to Mr. Jose Cabarga, or to his order, value received in specie from said gentleman, Havana.

" 7th April, 1842.  " Carlos Meyer."

What is called the superscription, signed by Carlos Meyer, is on the face of the note or instrument of writing immediately under

[*Cabarga v. Seeger.*]

the signature of Goutier, and dated the same day as is the agreement of Goutier.

It was alleged on part of defendant, that the doubt respecting the translation of this instrument is caused by an indistinctness or obscurity in the writing; that the letters composing the first word are either " paguere," or " paguese." If the former, it would be the first person singular of the future tense, meaning I will pay. The latter is the imperative mood, singular number, meaning let it be paid. The future tense is written with an *r*, and accent on the last syllable; the imperative tense is written with an *s*, and the accent is on the second syllable. It was alleged that in the instrument in question, there is an accent *marked over the last e* plainly.

The admission of the note and subscription was objected to.

1. Because irrelevant to the issues joined before the *narr.* filed November 19, 1849.

2. Because not admissible under the issues properly joined under that *narr.*, as it exhibits a new cause of action.

Which objections being overruled, defendant's counsel excepted.

Plaintiff's counsel offered William Esher as a witness, who being affirmed, says:—I witnessed the will of Carlos Meyer. (Promissory note and subscription in the Spanish language, shown to witness.) To the best of my knowledge, this signature is in the handwriting of Carlos Meyer; I know his handwriting; I know from having witnessed his will; I do not know whether I saw him write to his will or not; but he either wrote it or acknowledged it in my presence.

Cross-examined.—I have no knowledge from having seen him write at all; I was called upon to witness the will of Mr. Meyer at Mr. Keemle's office; I cannot say that I ever saw him write at all; I was only called to witness the will.

The note and subscription being offered in evidence, were objected to for want of knowledge in the witness of the handwriting of Meyer; 2. Objected to, under the pleadings. Admitted and excepted to.

C. Fallon, Esq., sworn.—The first word, *pergare*, of the subscription translated, is either " I will pay," or, " let it be paid."

Original note and subscription and translation given in evidence.

Constant Guillou, sworn.—I cannot say whether the word in the subscription should be translated, " I will pay," or, " let it be paid."

The counsel for plaintiff then closed his case.

Defendants' counsel thereupon moved for a nonsuit, which motion was overruled.

The defendants' counsel read in evidence the translation of several letters from the plaintiff to C. Meyer; one dated Havana, December 11, 1842, was as follows:—

[Cabarga *v.* Seeger.]

"*Havana,* Dec. 11, 1842.

"My Dear Sir:—Having none of your esteemed to answer, I profit by the opportunity, which the departure of the Gen. Warren offers me, to tell you, that the note which you left with me for $1800 on Mr. Goutier, which was due on the 7th inst., was not presented until to-day. Mr. Goutier was surprised, and told me that to this date he had remitted you $1121, and that he would pay me the balance, say $779, the last day of this month; therefore it is necessary for you to tell me, whether you have received the above sum, so that I may deliver to Mr. Goutier the note after he pays the balance, say $779."

The letter of January 21, 1843, was, *inter alia,* as follows:—
"I duly notice all that you say about Mr. Goutier, who, as I told you some days ago, is dead; and, as to his note, I keep it in my possession, in case somebody might claim it. In the mean time, I have credited you with the balance of the same, which Mr. Goutier paid me, in my account current."

In a letter dated Havana, March 22, 1843, he wrote that he had received his letter, containing the power of attorney to claim of the estate of Mr. Goutier the money belonging to plaintiff—to revise the accounts, and recover all the papers which exist.

The defendant then closed his case, and the judge charged the jury, "that they were to determine whether the subscription to the note was an original undertaking by Carlos Meyer, or an order to pay; that there was sufficient evidence of the due presentation of the note to the drawer thereof. That there was sufficient evidence of notice to Carlos Meyer of demand and refusal to pay the promissory note.

"That the verdict should be for the plaintiff, unless the jury believed that the property in the note was not transferred to Jose Cabarga, and that the subscription was for the purpose of collection."

To this charge defendant's counsel excepted.

Verdict was rendered for plaintiff for above $1100.

It was assigned for error:—1. In giving leave to plaintiff's counsel to file the additional counts. 2. In overruling the objections to the note and subscription; and also to the charge.

The case was argued by *Bleight* for plaintiff in error.

No demand was made in any manner until after the death of Meyer, which occurred in the spring of 1846, at Philadelphia. The claim was made by the institution of this action in July 1847, and it was for goods sold and delivered and for money lent. The *narr.* filed on 3d day of August, 1847, disclosed no other demand. One year and ten months after the issue was joined, the addi-

[Cabarga *v.* Seeger.]

tional counts were filed. The amended *narr.* was filed nearly seven years after the maturity of the note. The amendment introduced a new cause of action, which is not allowable. 5 *Bin.* 51, Ebersol *v.* Krug; 3 *Pa. Rep.* 65; 11 *Ser. & R.* 98; 2 *Rawle* 339; 4 *Barr* 198; 6 *Ser. & R.* 293.

The plaintiff cannot, by means of an amendment, recover a demand which has no existence in point of law at the time it was declared upon.

As to the charge that the jury were to determine whether the subscription to the note was an original undertaking by Carlos Meyer, or an order to pay; this was leaving the construction of the instrument to the jury.

*J. Fallon,* contrà:—The cause of action in the new counts was the same as that declared on more generally in the money counts, and in the bill of particulars. The instrument of writing would have been admissible under the count for money had and received, or money lent. 1 *Saund. Pl.* 495; 2 *Strange* 719; 1 *Burr.* 373; 7 *B. & C.* 416; 2 *Lord Raym.* 28; 2 *Saund. Pl.* 400; 2 *Greenleaf,* sec. 113.

Whether the engagement of Meyer was an original undertaking or an order to pay, was not material, as in either case it contained an express acknowledgment of money received. The question submitted to the jury was not the construction of a written instrument, but its proper reading and translation.

The opinion of the court was delivered March 22, 1852, by

COULTER, J.—We cannot recede and go backwards upon the subject of amendments under our statute. Those amendments are an amelioration of the rigid technical forms of pleading, demanded as well by the more liberal tone and manner of business in modern times, as by good sense and the general advancement of principle and justice over form and technicality. The real cause of action in this case, from beginning to the end, was identical and the same. That is, whether the executors of Meyer were liable to pay to Cabarga the amount due on the note made by Goutier on the 7th April, 1842, payable to the said Meyer or order, and endorsed (or, as it is called in the paper-book, the superscription, that being the word used, I presume, in the Spanish language,) to Cabarga for value received; or whether they were not bound. The case, in all its phases and aspects, presents this feature as the matter in controversy. That is, whether the subscription, as it is called, on the note was a transfer for value or a mere order to pay the money to Cabarga. The first *narr.,* containing only the general counts, did not set out the note and endorsement; and the bill of particulars did not set them out accurately, but yet sufficiently to identify them as the same which were set out in the amended *narr.* The

[Cabarga *v.* Seeger.]

cause of action being defectively set out, the plaintiff had a right to ask leave to set it out correctly on or before the trial. The court allowed the plaintiff to set out his cause of action, consisting of the note and endorsement, correctly, in an amended *narr.*, so as to bring the merits of the matter in controversy into judgment. The defendant pleaded to issue. There was no error in allowing the amendment. The additional count was filed by leave of the court, on the 19th November, 1849, and additional pleas filed by leave of court on the 26th November, 1850. So that there was ample time to digest the new count and to meet it. After a full trial on the merits, and verdict for plaintiff, we cannot disturb the judgment on this error assigned.

The note and endorsement was properly admitted in evidence; it is the very cause of action set out in the amended *narr.*; it was sufficiently proved to allow it to go to the jury. The witness who verified it, knew the signature of Meyer, witnessed his will, and, if he did not actually see him write his name, heard him repeatedly acknowledge his signature. The fact of its not being described in the first general counts, neither constitutes a variance nor furnishes any objection whatever to its admission. Indeed, it might have been good under the general counts, because there is a distinct, unequivocal assertion in the endorsement that it was transferred to Cabarga for $1800 in specie. But under the pleadings, as they stood, it was proper evidence.

There was no error in submitting to the jury the facts alleged to be evidenced by the superscription. The court did not submit to the jury the legal construction or the legal effect of the paper, nor yet the meaning of words *qua* words. But a word existed in the paper, as to which there was the testimony of two witnesses, whether it was one word or another. The word was obscure by an abrasion from time or accident, or was illegibly written. But the defendant himself had put in a number of letters, tending to establish facts and circumstances, from which it was to be inferred that the endorsement was an authority to collect. The court very properly submitted the fact to the jury. They could rightfully do nothing else; and thus they gave the defendant the full benefit of his testimony. The instruction from the court to the jury upon this evidence was right, that is, if they were satisfied from the evidence that the superscription was a mere authority to collect the money from Goutier, and not a transfer to Cabarga for the consideration of $1800, that their verdict should be for the defendant; otherwise, for the plaintiff.

The court told the jury that there was sufficient evidence of demand and refusal to pay by the drawee, Goutier. And there certainly was, if the evidence produced by the defendants was believed by the jury. The evidence is contained in one of the letters. The court also said that there was sufficient evidence of

notice to Carlos Meyer, the alleged endorser; and this is evidenced in the same manner, by one of the letters put in evidence by defendant.

The only doubt raised on the argument was, whether the law in force in Cuba allowed three days' grace on commercial paper. It was admitted that if their law was the same as ours, that then the instruction was right. But what evidence have we that the learned judge at *nisi prius* was wrong? There is no testimony on the paper-book as to the foreign law. It was the duty of the counsel to produce evidence here of the foreign law. It is probable that the learned judge knew and had informed himself as to the law of Cuba. At all events, we cannot say that he was wrong, without knowledge or evidence ourselves. I would say, that as commercial law springs from the same sources in civilized commercial countries, that the presumption is that the judge below was right, in the absence of all evidence or knowledge to the contrary.

Judgment affirmed.