# Berkley, Appellant, *v.* Maurer.

*Judgment—Opening judgment—Forgery—Evidence—Indictment—Estoppel of record—Contradiction of party.*

On the trial of an issue to determine the validity of a judgment entered upon a judgment note signed by two persons, where one of the defendants swears that his signature was a forgery, it is proper to admit in evidence a written information signed and sworn to by the plaintiff, charging the other defendant with having feloniously forged to the note in suit, the name of the defendant who denied his signature. Such evidence, however, is not conclusive on the plaintiff, nor is it necessary that it be regarded as contradictory of any testimony delivered by him on the witness stand.

A witness speaks in court through his testimony only and hence his testimony forms the sole basis upon which the inconsistency of his other statement is predicated. But a party, whether he himself take the stand or not, speaks always through his pleadings and through the testimony of his witnesses put forward to support his pleadings; hence the basis upon which may be predicated a discrediting inconsistency on his part includes the whole range of facts asserted in his pleadings and in the testimony relied on by him. Thus, in effect and broadly, anything said by the party may be used against him as an admission, provided it exhibits the quality of inconsistency with the facts subsequently asserted by him in pleadings or in testimony.

On the trial of an issue to determine the validity of a judgment, where one of the two defendants testifies that his signature is a forgery, an indictment against the other defendant returned by the grand jury as a true bill, is inadmissible; and it is immaterial that the name of the plaintiff had been indorsed on the bill by the district attorney, as a witness for the state. Such testimony is dangerous, as it would be both easy and natural for the jury to regard the finding of the grand jury as a determination, by an independent tribunal, that a forgery had been committed, and to give it weight accordingly.

*Evidence—Witnesses—Forgery—Expert witnesses.*

On the trial of an issue where the question involved is the forgery of a signature, witnesses may testify who are actually familiar with the genuine signature of the defendant, either from having seen him write, or from having conducted a correspondence with him, or from having seen signatures acknowledged to be genuine and acted on them in the usual course of business. Such witnesses are not expert witnesses, and are not required to qualify as such. The scantness of their knowledge affects their credibility rather than their competency.

A mere general comment in a charge disparaging the quality and value of expert testimony, is not ground for reversal.

Argued May 7, 1907.   Appeal, No. 122, April T., 1907, by plaintiff, from judgment of C. P. Somerset Co., Feb. T., 1903, No. 214, on verdict for defendant in case of H. M. Berkley v. E. B. Maurer.   Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ.   Reversed.

Issue to determine the validity of a judgment entered upon a judgment note.   Before KOOSER, P. J.

The defendant, E. B. Maurer, claimed that his name had been forged to the note upon which judgment was entered.

At the trial the court admitted under objection and exception an information made by the plaintiff, H. M. Berkley, against C. A. Blanchard, charging him with the forgery of the note in suit. [4]

Defendant made the following offer :

Mr. Berkey : Counsel for the defendant proposes to offer the bill of indictment found by the jury February 25, 1903, entered to No. 51, February sessions, 1903, in which a true bill was found against C. A. Blanchard, charging with him with forgery, and in which bill H. M. Berkley, the prosecutor, is marked as one of the witnesses that testified before the grand jury.

Mr. Ruppel : That is objected to as irrelevant and immaterial.

The Court : It appearing that the bill of indictment offered is in pursuance of the complaint of H. M. Berkley just admitted in evidence, and that by the indorsement it was found upon the testimony of E. B. Maurer and H. M. Berkley, we admit the paper in evidence and note an exception to the plaintiff. [5]

Under this offer the indictment against C. A. Blanchard, which was returned by the grand jury as a true bill, was read to the jury.

The court charged in part as follows :

[Testimony as to things about which people could know and testimony about opinion resting on inference are of different character.   On the question of this signature, for instance, the only positive testimony I now recollect is the testimony of Mr. Maurer ; that is not an opinion.   The testimony of the other

witnesses called for the plaintiff and for the defendant is matter of opinion, but it is entitled to consideration in the jury-box, and if all the circumstances will lead the jury to the conclusion that the opinion is to be given greater weight against the positive testimony, the plaintiff is entitled to it. If you conclude that the opinion testimony is not entitled to the same weight as the positive testimony, then of course the evidence based on opinion would give way. Whether notice of the maturity of the note was given is not a matter of opinion. There is positive testimony on this matter, based upon recollection of the parties, probably, and yet if it is not a matter of recollection it might be a matter of veracity.

Now, after this testimony of Maurer, the defendant called Mr. Berkley to the stand to testify with respect to an information or a complaint made by him, lodged before a justice of the peace on February 20, 1903, against C. A. Blanchard, charging Blanchard with having committed a forgery in writing the questioned signature E. B. Maurer to the note now offered in evidence. And we admitted this affidavit in evidence, together with a bill of indictment that followed the affidavit, because it was a continuance along the same line of legal procedure and the indictment itself showing that it was presented to a grand jury upon the faith of the testimony of E. B. Maurer and H. M. Berkley, the two people who ought to know most about this question in controversy, and we admitted this in the nature of an admission by Mr. Berkley, whether he be treated as the plaintiff or as the agent active in procuring the note. We felt that he could best know of any others, and we admitted it in the nature of an admission by him, subject to his right of explaining the circumstances under which it was given.

Now this note was executed on February 28, 1901, and was due May 28, 1901, and this information was lodged on February 20, 1903, nearly two years after the execution of the note, when presumably inquiry had been made as to the character of the note and this signature. After the paper was introduced Mr. Berkley went on the stand, and in line of what we have said about presuming him capable of explaining, he said that this information was made after the bank had entered judgment upon the note in the prothonotary's office, and after Mr. Maurer had filed a petition asking to have that judgment

opened and tried here in court, and that petitioner had made his affidavit that the signature purporting to be his name was a forgery, and Mr. Berkley made this affidavit on the faith of Mr. Maurer's information and not upon any knowledge of his own.

The defendant's answer to that is a submission to you of the affidavit itself, which I believe was said to be in Mr. Berkley's handwriting, that it is not therein stated that it was upon information and belief, but that Blanchard did forge the certain writing specified. The paper may go out with you into your room, and you will examine it to see precisely what it does state.] [14]

[To illustrate it by getting away from this case, if one of you gentlemen had reared upon your farm a horse, had cared for it all its days, had kept a record of its birth, and after the horse became ten years old a question would arise about it in court, and the one man who had lived among horses and would be an expert, having examined the horse, would go on the stand to give his opinion as to the age of the horse from certain indications he has observed, and you would go on the stand to testify from your own knowledge of the birth of the horse, corroborated by your own book entry in your own house, you will understand what I mean when I say your positive testimony from your own knowledge of fact is a higher order of testimony than the testimony of the expert based on reasons that influenced him, and therefore in that sense we say that expert opinion is of a lower order than testimony from direct knowledge.] [15]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (4, 5) rulings on evidence as above, quoting the bill of exceptions; (6–12) various rulings on the competency of witnesses, and (14, 15) above instructions, quoting them.

*W. H. Ruppel*, with him *George R. Scull* and *John R. Scott*, for appellant.—There was error in admitting the information and indictment against C. A. Blanchard in evidence: Harger v. Thomas, 44 Pa. 128.

*J. A. Berkey*, for appellee, cited: Harger v. Thomas, 44 Pa. 128.

OPINION BY HEAD, J., October 7, 1907:

To No. 214, February Term, 1903, of the court of common pleas of Somerset county a judgment was entered in favor of H. M. Berkley, cashier, against C. A. Blanchard and E. B. Maurer. This judgment was entered by virtue of a warrant of attorney attached to a note under seal purporting to have been signed by those parties. Upon the petition of Maurer, alleging that the note, as to him, was a forgery, the court opened the judgment and an issue was framed to try the disputed question of fact. The loan, to secure which the note was given, was negotiated by Blanchard who was the son-in-law of Maurer. He had signed the note in the bank, in the presence of its officer, and undertook to procure the signature of his father-in-law who was known as a man of financial responsibility. Shortly thereafter he presented the note purporting to be thus signed, which was accepted by the bank and the money was given to Blanchard. Upon the filing of the affidavit by Maurer declaring that he had never signed the note nor authorized anyone to attach his name thereto, the cashier, Berkley, made an information before a magistrate charging Blanchard with forgery, and a warrant for his arrest issued. The record before us does not show that he was ever arrested; on the contrary, we gather from the testimony, in the case now under consideration, that he had absconded. Nevertheless a bill of indictment was framed and sent to the grand jury upon which were indorsed the names of Maurer and Berkley, the cashier, and it was returned a true bill. Of the subsequent history of the criminal proceeding thus begun, we are not informed.

Upon the trial of the issue in the common pleas the burden of establishing that the defendant had signed the note was on the plaintiff. During the progress of the plaintiff's case in chief Berkley was called as a witness. No testimony was sought or elicited from him as to the signature in question. He did not give nor was he asked to give any opinion concerning it. He simply identified another signature of the defendant's as genuine for the purpose of obtaining a "standard." There was no dispute as to this signature and it was admitted in evidence without objection. Later on he was recalled by the plaintiff and testified to the execution of the note by Blanchard in his presence, the length of time the latter was absent from

the bank, and the condition of the note when he returned with it. The genuineness of the signature having been testified to by other witnesses competent for that purpose, the note was offered and admitted in evidence and the plaintiff rested.

By way of defense the defendant offered, inter alia, the written information, signed and sworn to by the plaintiff, charging Blanchard with having feloniously forged the name of Maurer to the note in suit. It was admitted against the objection of the plaintiff and this ruling is the subject of the fourth assignment of error. We think the offer was both competent and relevant. In the action being tried the plaintiff sought to recover from the defendant a large sum of money. The only evidence of the liability of the latter was the note purporting to be his written contract to pay. If he did not sign that note he owed the plaintiff nothing. The offer was a specific, unqualified declaration or admission by the plaintiff that the defendant had not signed the note, but that his name had been feloniously forged by another, or, in other words, that the defendant owed no money. Such an admission of a plaintiff ought to be received in any action wherein he sought to recover from another on a theory at variance with his former declaration. True, it would by no means conclude the plaintiff, and if followed, in the present case, by testimony tending to show that the information was based on the affidavit of the defendant himself, but little weight might be attached to it by the jury. It was subject to this right on the part of the plaintiff that the offer was admitted by the court. To make such an admission, by a party competent, it is not necessary that it be regarded as contradictory of any testimony delivered by him on the witness stand. In this respect he occupies a different attitude from one who is merely a witness. Professor Wigmore, Vol. II, sec. 1048, thus clearly states the distinction : " The witness speaks in court through his testimony only and hence his testimony forms the sole basis upon which the inconsistency of his other statement is predicated. But the party, whether he himself takes the stand or not, speaks always through his pleadings and through the testimony of his witnesses put forward to support his pleadings ; hence the basis upon which may be predicated a discrediting inconsistency on his part includes the whole range of facts asserted in his plead-

ings and in the testimony relied on by him.    Thus, in effect
and broadly, anything said by the party may be used against
him as an admission, provided it exhibits the quality of incon-
sistency with the facts now asserted by him in pleadings or in
testimony." The fourth assignment must, therefore be over-
ruled.

The fifth assignment complains of the action of the court in
admitting in evidence and permitting to be read to the jury
the bill of indictment already referred to and the finding of the
grand jury thereon.    The indictment itself was but the ampli-
fied statement in legal verbiage of the accusation contained in
the information.    It was in no sense the act or declaration of
the plaintiff.    Nor was the finding of the grand jury anything
more than the formal assent of that body, after an ex parte
hearing, to the proposition that the defendant ought to be tried
in open court on the charge contained in the bill.    Even in the
trial of that case the finding of the grand jury could not be re-
garded as evidence helpful in determining the issue involved.
Much less we think could it, in the present issue, aid the jury
in reaching a correct solution of the question submitted to
them.    If, then, the bill and the grand jury's return were not
primary evidence tending to establish the contention of the
present defendant, that his name had been forged on the note
in suit, neither were they useful to contradict any testimony
delivered by the plaintiff nor to show a former attitude on his
part, in relation to that contention, inconsistent with his main-
tenance of the present action.    The mere indorsement of his
name on the bill by the district attorney, as a witness for the
state, did not even establish that he had gone before the grand
jury at all.    If he did he went not as a volunteer but as any
other witness.    And what ground is there for assuming that
if he was in fact called before that body, his testimony was in
any respect different from that delivered in the present case,
where it was confined to matters entirely collateral to the main
question ?    The proceedings in the quarter sessions were, there-
fore, purely res inter alios acta and their injection by the de-
fendant into this record should not have been permitted by the
court.    Whilst the point decided in Harger v. Thomas, 44 Pa.
128, was not precisely the one before us, the reasoning of the
opinion delivered by Mr. Justice THOMPSON strongly supports

the conclusion here reached. As it would be both easy and natural for the jury, in the present case, to regard the finding of the grand jury as a determination, by an independent tribunal, that a forgery had been committed, and to give it weight accordingly, we cannot say that the error in admitting the offer was a harmless one. The fifth assignment is sustained.

We have attentively considered all of the numerous assignments remaining, but can discover no advantage to be derived from a discussion of them either singly or in the groups into which they have been arranged.

The witnesses whose competency is attacked in several of these assignments did not attempt to qualify as expert witnesses. Their testimony was received on the ground that they were actually familiar with the genuine signature of the defendant either from having seen him write, from having conducted a correspondence with him, from having seen signatures acknowleged to be genuine and acted on them in the usual course of business. Although, in some of the instances complained of, the knowledge of the witness was so slight that the testimony would probably have but little weight before a discriminating jury, yet the fact that his knowledge was scant affected his credibility rather than his competency. The learned trial court could not, therefore, have properly rejected any of these witnesses : McNair v. Commonwealth, 26 Pa. 388 ; Cabarga v. Seeger, 17 Pa. 514 ; 15 Am. & Eng. Ency. of Law (2d ed.), pp. 254–256.

It is true also that the learned court below in the general charge commented in a somewhat disparaging way on the quality and value of expert testimony, but we cannot say he went beyond permissible limits in doing so because our Supreme Court has said of such testimony, in Dawson v. Pittsburg, 159 Pa. 317, "it is matter of opinion at best, and the lowest grade of evidence that ever comes into a court of justice. It is permissible only because, bad as it is, there is nothing better attainable." All of the assignments of error, except the fifth, are overruled, but the fifth, for the reasons given, is sustained.

Judgment reversed and a venire facias de novo awarded.