## Somers, Executrix, v. Hildenbrand

*David S. Malis,* for plaintiff.
*John Ryan,* for defendant.

LEWIS, J., April 1, 1937.—This action was brought by the ancillary executrix of the deceased mortgagee, a New Jersey resident, on the bond accompanying a mortgage upon real estate situated in New Jersey. Defendant is a resident of Pennsylvania. The statement of claim avers the execution of the bond and mortgage, a default, proceedings by bill in equity to foreclose the mortgage, a decree by a New Jersey chancellor directing sale and fixing damages, sale of the property, which failed to produce enough money to satisfy the obligation, and demand for the balance and failure to pay.

The affidavit of defense admits substantially all the facts averred, but denies that any cause of action now exists, by reason of the fact that the suit on the bond to recover a deficiency judgment was not brought within the time required by New Jersey law: New Jersey Compiled Statutes, page 3421, P. L. 1880, page 255, as amended by P. L. 1881, page 184, as amended March 29, 1933, ch. 82, page 172, i. e., within three months after sale. The statute is set forth in paragraph 7 of the affidavit of defense. Defendant also contends that the provisions of the 1933 amendment, supra, have not been complied with insofar as they relate to ascertainment at time of sale of the fair value of the property foreclosed and set-off of this value against the deficiency of the proceeds of sale. This pro-

vision is substantially identical with the Pennsylvania Deficiency Judgments Act of January 17, 1934, P. L. 243, declared to be unconstitutional by the Pennsylvania Supreme Court as applied to mortgages executed before its enactment: Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483 (1936). Defendant alleges that the fair value at time of sale was in excess of the amount of the bond, interest, and costs, and denies that any demand for the payment of the amount fixed by the decree in foreclosure was made by plaintiff.

The reasons advanced in support of the rule for judgment are that the affidavit of defense is evasive, is not sufficient in law, and offers an interpretation of the New Jersey statutes contrary to that made by the highest appellate court of that State. We have concluded that the rule for judgment must be made absolute.

It has been brought to our attention that the interpretation of the statute asserted by defendant has been the subject of contrary judicial interpretation by the New Jersey Court of Errors and Appeals, and, in fact, has been superseded by express legislative enactment: New Jersey Laws of March 22, 1935, ch. 88, page 260:

"1. In all cases where a bond and mortgage has or may hereafter be given for the same debt, all proceedings to collect said debt shall be, first, to foreclose the said mortgage, and if at the sale of the mortgaged premises under said foreclosure proceedings the said premises should not sell for a sum sufficient to satisfy said debt, interest, and costs, then and in such cases it shall be lawful to proceed on the bond for the deficiency, and that all suits on said bond shall be commenced within three months from the date of confirmation of the sale of said mortgaged premises and judgment shall be rendered and execution issued only for the balance of debt and costs of suit; *provided, however,* that no action shall be instituted against any party answerable on the bond unless such party is joined in the proceedings to foreclose the said mortgage; *and provided, further,* that the obligor or obligors in said

bond may file an answer in the suit on said bond disputing the amount of such deficiency, in which event both parties may introduce in evidence at the trial, testimony of the fair market value of the mortgaged premises at the time of the sale under said foreclosure proceedings, and the court, sitting with or without a jury, shall determine the amount of said deficiency by deducting from said debt the amount found to be the fair market value of said premises".

The information upon the state of the law of New Jersey which is given us in the affidavit of defense and defendant's brief is erroneous and misleading.

The principles concerning entry of judgment upon a rule for judgment for want of a sufficient affidavit of defense have been repeatedly stated by our appellate courts. These are: (1) The court may consider only the statement of claim and affidavit of defense; (2) the statement of claim must be self-sustaining; (3) summary judgment may be entered only in clear cases, and not in cases requiring a broad inquiry into fact: See Woodward, Motions and Rules in Pennsylvania, sec. 302; Halpern v. Axelrod et al., 120 Pa. Superior Ct. 352; Ridley Park Borough v. American Surety Co. of N. Y., 317 Pa. 263; Cain v. Crow, 114 Pa. Superior Ct. 567; 4 Standard Pennsylvania Practice, §§224, 228, and 231.

The statement of claim herein is self-sustaining, and this is a clear case, although an inquiry must be made into a question which heretofore has been regarded as one of fact, i. e., the state of the law in New Jersey.

The principal question before us is whether we are justified in making absolute a rule for judgment when the affidavit of defense contains an averment, although incorrect, that the action is barred by the law of the jurisdiction in which the cause of action arose. The contract was executed in and is performable in New Jersey, which law we are hence bound to apply under the principles of conflict of laws.

Substantially the same question has arisen before in

Musser v. Stauffer, 178 Pa. 99, in which case it was held that a rule for judgment for want of a sufficient affidavit of defense, the fact being evident from the pleadings that the law of Virginia governed the validity of the defense, should be discharged, for the reason that the court could not take cognizance of the law of a foreign jurisdiction, which was a fact to be proved at trial.

However, in State of Ohio v. Hinchman, 27 Pa. 479, our Supreme Court decided that in a case arising under the Constitution and laws of the United States the State court was bound to notice the local law of a foreign jurisdiction. That ruling was based upon the effect of the full faith and credit clause of the Federal Constitution, article IV, sec. 1, and the Act of Congress of May 26, 1790, 1 Stat. at L. 122, providing for the method of authenticating the records and judicial proceedings of the State courts. We do not regard this case as being at all decisive of the question here, but it does indicate that there is no inherent disability in the State courts to ascertain without proof the law of other States. The Hinchman case and others to the same effect have been criticized by the United States Supreme Court in Hanley et al. v. Donoghue, 116 U. S. 1, on the ground that the rule announced is based upon a misapprehension of the distinction between original and appellate jurisdiction of Federal courts.

In Breintall's Estate, 26 D. & C. 408, 412 (1936), Stearne, J., remarked:

"In the excellent brief of counsel for petitioner, New Jersey statutes are cited concerning procedure in estate settlements, but the laws of another State or country are matters of fact and must be proved as such, and in the absence of such proof they will be presumed to be the same as the law of Pennsylvania: Bennett et al v. Cadwell's Exec., 70 Pa. 253; Cabarga v. Seeger, 17 Pa. 514, 520; Evans v. Cleary, 125 Pa. 204, 211; Van Auken v. Dunning, 81 Pa. 464, 467; Musser v. Stauffer, 178 Pa. 99, 105; Linton v. Moorhead, 209 Pa. 646, 649; Bayuk

Bros., Inc., v. Wilson Martin Co., 81 Pa. Superior Ct. 195, 197; Semple v. Kramer et ux., 83 Pa. Superior Ct. 161, 163."

This is not the precise case before us, since defendant's answer sets forth the New Jersey statute alleged to bar recovery. We think it an unsound rule that would today compel us to accept as true incorrect averments of the statute law of another jurisdiction. Two statutes are involved in the case at bar, and one of these we know has been declared unconstitutional by the highest appellate court of New Jersey, and the other has been amended so as to declare expressly that which had before been declared by judicial interpretation.

There is no doubt that the rule in some 31 States of the United States is that the court of the forum will not notice judicially the laws of other States unless pleaded and proved: 3 Beale on Conflict of Laws, secs. 621.3 and 621.5; 15 R. C. L. 1071 et seq.; 23 C. J. 131 et seq.; and such has been the law in Pennsylvania: General Motors Acceptance Corp. v. Foley, 311 Pa. 477 (1933), and see cases cited in Breintall's Estate, supra.

In 15 States the rule has been changed by statute directing that judicial notice be taken or making it permissible: See 3 Beale Conflicts (1935 ed.), sec. 621.3; 11 Minn. L. R. 1; 30 Mich. L. R. 747. The Mississippi statute is a model of conciseness and simplicity:

"When any question shall arise as to the law of the United States, or of any other state or territory of the United States, or of the District of Columbia, or of any foreign country, the court shall take notice of such law in the same manner as if the question arose under the law of this state": Hemingway's Miss. Code Ann., sec. 735 (1917).

The common-law rule has been sharply criticized in The Hammond Motor Co. v. Warren, 113 Kan. 44, 46:

"Nor would it be indiscreet to add that the old rule that a court cannot consider and apply the general statutes of another state unless they are specially pleaded and

formally proved, even to prevent a miscarriage of justice, is an anachronism which comes down from the times when statutes of other states were not readily accessible, and the judiciary will not wait much longer for legislative assistance to get rid of it altogether."

In Gorman v. St. Louis Merchants Bridge Terminal Rwy. Co., 325 Mo. 326, 332, 333, the court said:

"In support of its first assignment appellant has cited Illinois cases as exemplifying the principles of law which it insists are controlling with respect thereto, the cause of action having arisen in the State of Illinois. The law as so interpreted would be controlling if we were cognizant of it. It was neither pleaded nor proven, and we cannot take judicial notice of it. This last seems an absurd thing to say when it is considered that the official reports of the courts of last resort of our sister state are lying here before us and that we frequently cite cases reported in them as persuasive authority in support of our own rulings. But until the Legislature sees fit to fully release us from this archaic rule (see Laws of 1927, p. 151), we are supposed to abide by it. Being in ignorance therefore of the common law as interpreted by the courts of Illinois, it not having been pleaded, we must apply it as expounded in this State."

See also Rashall v. St. Louis, I. M. & S. R. R. Co., 249 Mo. 509, 155 S. W. 426; Lyons v. Metropolitan Street R. R. Co., 253 Mo. 143, 161 S. W. 726.

In New Hampshire and Louisiana the rule has been repudiated by judicial action: Saloshin, Admx., v. Houle, 85 N. H. 126 (1931). There the administratrix of a New York decedent, killed in New Hampshire, having accepted compensation from a New York employer, brought an action for negligently causing death in New Hampshire. A New York statute provided that acceptance of compensation worked an assignment to the insurer of the cause of action. The insurer's action was required to be brought within two years of death. After the two-year period had elapsed, the insurer moved to be included as plaintiff in the New Hampshire suit. Motion to dismiss

the suit was discharged, the court taking notice of the New York statute, and saying, at page 136:

"No radical departure from general authority results. As has always been the case here, and in most jurisdictions, the issue of foreign law is one addressed to the court, and not to the jury. The issue now remains one of fact. Its treatment as one of law, so far as may be enabled under the doctrine of construction, is generally given. The most that is now done is to broaden the application of that doctrine and to invoke the principle of judicial notice in respect to it. To construe foreign law is an unquestioned exercise of the judicial function. How it may be done is a subsidiary and minor matter. The extension of the limited methods generally prevailing is substantially all that is made in advance of general authority. The proper functions of the court, the natural and suitable method of treatment of issues of this character, and uniformity and consistency in the law demand the extension so strongly as to outweigh opposing argument. The policy of the law is against casual distinctions, and as itself a principle it should prevail over rules when their application tends to make the law uncertain and variable. And the result is to strengthen the probability that the foreign law is correctly proved."

In Rush et al. v. Landers, 107 La. 549, 559, the court said:

"The plaintiffs have proved the adoption of the common law by the state of Indiana, a fact of which we might have taken judicial notice, as we now take judicial notice of what the common law is, though we do not take such cognizance of the statutory modifications of that law. Copley vs. Sanford's Extr., 2 Ann. 335; Kling vs. Sejour, 4 Ann. 130; Ripka vs. Pope, 5 Ann. 63; Gates vs. Gaither et als., 46 Ann. 292; Lambert vs. Ins. Co., 50 Ann. 1031; Roehl vs. Porteous, 47 Ann. 1582; 13 Am. & Eng. Ency. of Law (2nd Ed.), 1058."

The principle, when first established, undoubtedly was wise. The absence of our present-day easy means of com-

munication and wide dispersion of legal publications tended to create reliance upon the court's personal knowledge and study of its library, usually limited to decisions of its own jurisdiction. Likewise the cases in which the need for reference to foreign law occurred were infrequent.

"The early cases, influenced perhaps by the conception that foreign law is a fact, readily agreed that this burden fell upon the jury. The practical disadvantages of such a ruling must have been obvious from the beginning; and any careful analysis of the distribution of function between judge and jury would seem readily to indicate the lack of any strong theoretical compulsion for such a result. In any event, the more recent cases indicate strong tendency of the courts to lift this burden from the jury and place it upon the judge, where it obviously belongs": Beale on Conflict of Laws (1935 ed.), sec. 621.5. See also Dean Wigmore's statement in Wigmore on Evidence (1934 Supp.), sec. 2558:

"By the general trend of professional opinion, the common-law doctrine is being abandoned, and the terms of a foreign law become a question for the judge."

The rule having been modified extensively by judicial action in this regard, so that interpretation of foreign law is a question for the court, there is no particular objection to completing the change and permitting the court to take judicial notice of foreign law.

In States in which the old rule is unmodified by statute or judicial action, a rule of convenience has been developed to the effect that in the absence of pleading and proof the law of the sister State will be presumed to be the same as the common law of the forum, although there is no presumption that the statutory law of another State is the same as that of the forum: A. L. I. Restatement of Conflict of Laws, §§622 and 623. These presumptions apply, of course, only when the sister State's system is that of the common law, of which fact judicial notice will be taken. (Cf. the practice in Louisiana, where the law is of

civil derivation, and Rush v. Landers, supra.) The inadequacy of this use of presumptions to satisfy the conflict of laws rule that the lex loci will be applied by the forum is patent. This rule of convenience has been criticized in Bennett et al. v. Cadwell's Executor, 70 Pa. 253, and by former Chief Justice Robert von Moschzisker in 11 Minn. L. R. 1.

It is within the power of the court to require from counsel a brief on the principles of a foreign law, although, with library facilities available, such is not usually necessary. Despite unfamiliarity with the exact point in question, which may occur even in regard to domestic law, it is no great hardship to ascertain the foreign rule. Constant reference is made to the reports of our sister States as persuasive authority upon unsettled questions within our jurisdiction. We fail to appreciate the rule of convenience with its lack of logic and tendency to cause injustice. The time to apply the maxim cessante ratione legis cessat ipsa lex has arrived.

Whenever a domestic statute that in the opinion of the court is inapplicable is set up by the affidavit of defense, the averment is regarded as no averment at all, for an insufficient affidavit of defense is no affidavit of defense at all: Andrews v. Blue Ridge Packing Co., 206 Pa. 370. No greater validity should be accorded the averment of a foreign statute which has been overruled or amended. We, therefore, disregard the foreign statute as averred. It is a fact, however, that the statute as averred has been construed to mean the same thing as the Act of 1935, supra, i. e., that action for the deficiency must be brought within three months from date of confirmation of sale: Wootton et al. v. Pollock et al., 116 N. J. Eq. 490, 181 Atl. 172. The reasoning of the court is set forth at page 174 of the opinion:

"Upon sound reasoning, it would appear that there was no sale until the Court of Chancery judicially determined, by virtue of the requirement of the statute, that the sale was valid and effectual. Vanderbilt v. Brunton

Piano Co., 111 N. J. Law 596, 169 A. 177, 89 A. L. R. 1080. If the sale had not been confirmed, the amount of deficiency, if any, was not determined, and appellant's right to have a judgment or decree for such undetermined deficiency was nonexistent. We conclude that a sale, under the statute in question, is not complete until after confirmation, and that the bill in this case was filed within that time."

The New Jersey Act of 1933, providing a procedure substantially identical with our Deficiency Judgments Act of 1934, has been declared unconstitutional by the Court of Errors and Appeals of New Jersey: Vanderbilt, Trustee, v. Brunton Piano Co., 111 N. J. L. 596, 169 A. 177. The 1935 statute, set forth above, reënacts the 1933 statute. It has also been held unconstitutional as to contracts executed before its passage: Sayre et al. v. Duffy, 13 N. J. Misc. 458. If we accept the averment of the 1933 statute, nevertheless we would be constrained to hold it unconstitutional as to this bond and mortgage executed prior to its passage, because in violation of the contracts clause of the United States Constitution: Art. I, sec. 10.

If we likewise accept the averment of the 1933 statute as limiting the time within which action for a deficiency may be brought, we also reach a result fatal to defendant. The statement of claim, with attached exhibits, shows that the procedure to recover on a defaulted bond and mortgage is by bill in equity for foreclosure of the mortgage, followed by action at law on the bond to recover the deficiency, if one exists. The sale on foreclosure, being under the control of the equity court, is not a sale until it has been confirmed. We have noted above that, in New Jersey, the "date of sheriff's sale" in the 1933 statute has been construed to mean date of confirmation of sale: Wootton et al. v. Pollock et al., supra. In construing the statute, as averred, our decisions compel the same result.

"A sale of land by order of the orphans' court, whether for payment of debts, in partition, or under the act of April 18, 1853, is a sale by the court, through an agent, an

executor, administrator, guardian or trustee. The purchaser's offer by his bid, provisionally accepted by the agent, is in law but an offer to the court, and the sale is not complete until the court has signified acceptance by confirming the sale. Until such confirmation, the court may decline the offer, and direct a resale, if this is required by justice or by the interests of the estate: Demmy's Appeal, 43 Pa. 155; Hamilton's Estate, 51 Pa. 58; Brown's Appeal, 68 Pa. 53; Armstrong's Appeal, 68 Pa. 409": Brittain's Estate, 28 Pa. Superior Ct. 144, 147.

Still another reason for holding this affidavit of defense insufficient exists. In Mason-Heflin Coal Co. v. Currie et al., 270 Pa. 221, 223, the rule as to averment of facts in the statement of claim in anticipation of a plea of the statute of limitations is stated:

"There is a vital distinction between cases where the claim was originally enforceable by suit, but recovery thereof may or may not have been lost by a failure to bring it within the time prescribed by the statute of limitations; and those, like the present, where the claim never was enforceable unless the statutory requirements were observed. Under the former, the facts necessary to take the case out of the statute need not be set forth (Heath v. Page, 48 Pa. 130; Barclay v. Barclay, 206 Pa. 307); under the latter, which are in effect proceedings for specific performance of the contract (Herzberg v. Irwin, 92 Pa. 48; Murray v. Ellis, 112 Pa. 485; Black v. American International Corp., 264 Pa. 260), they must be averred in order to show a recovery may be had under the statute: Hogle v. De Long Hook and Eye Co., 248 Pa. 471." See also 37 C. J. 1200, and cases cited thereunder.

We conclude there was no necessity for plaintiff to set forth the date upon which the sale was confirmed, although the date of foreclosure decree and sheriff's sale were averred.

Defendant, however, is obliged to aver the facts upon which his defense of the statute of limitations is based. A

mere averment that the action is barred by the statute of limitations is a conclusion of law where no sufficient facts for the court to decide that question are contained in the pleadings. An affidavit of defense averring conclusions of law but not facts upon which the conclusions are based is insufficient. No citation of authority is necessary for this well-settled principle. Having failed to aver the date of confirmation of the sheriff's sale, the affidavit of defense is insufficient.

For the reasons stated above the rule for judgment for want of a sufficient affidavit of defense must be made absolute.