HARRY RASHALL v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

Division One, April 8, 1913.

1. **FOREIGN LAW: Pleading and Proof: Negligence: No Fellow-Servant Statute.** If the statute of another State is the foundation of the cause of action it must be both pleaded and proven; if it is only evidentiary, it may be proven though not pleaded. In both cases it must be proven. But where the case is founded on negligence and consequent personal injuries, and no statute was pleaded or proven, and no decisions of that State declaratory of the common law were introduced, but there was a stipulation that there is in the State in which the accident occurred no statute governing the relation of fellow-servants, the case will be disposed of according to the principles of the common law as it has been expounded in this State.

2. **NEGLIGENCE: Yard Man: Humanitarian Rule: Might Have Seen.** The defendant's servants operating its trains were not required to look for a yard clerk, whose duty it was to traverse the switching yards and check up the cars as they came in and whose foot, as he walked across the track in front of a slowly

moving train, which he saw, caught in a switch; the duty attached to his calling to look out for his own protection. Hence, it was error to instruct that if the servants in charge of the engine saw, "or by the exercise of reasonable care and diligence might have seen," plaintiff's peril in time, by the exercise of ordinary care, to have stopped the engine in time to avoid injuring him, he was entitled to recover. The defendant is not liable unless the train men actually saw him in time by the exercise of ordinary care to have stopped the engine before injuring him. And where there is no testimony on plaintiff's part that they saw him at all, and the engineer testifies he did not see him at all, the switchman that he did not see him in a position of peril, and the fireman that he saw him just as the engine struck him, there can be no recovery under the humanitarian rule, and the case should not have been submitted to the jury.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune*, Judge.

REVERSED:

*Martin L. Clardy, Edw. J. White* and *Martin Lyons* for appellant; *Elijah Robinson* of counsel.

(1) The plaintiff, under his own statement, was guilty of contributory negligence in attempting to cross the track directly in front of a moving locomotive approaching him in plain view. Loring v. Railroad, 128 Mo. 349; Moore v. Railroad, 176 Mo. 544; Hook v. Railroad, 162 Mo. 569; Vanback v. Railroad, 171 Mo. 338. Plaintiff assumed the risk of injury from moving cars and engines in the defendant's railroad yard as a matter of law. Aerkfetz v. Humphrey, 145 U. S. 418; Loring v. Railroad, 128 Mo. 349. A railroad company was not required to block switch frogs at common law and the risk of injury from stepping into such open, obvious places as unblocked frogs, was assumed as a matter of law in Illinois. Railroad v. Crow, 155 Ill. 72; Railroad v. Massig, 50 Ill. App. 666; Railroad v. Healey, 108 Ill. App. 531; Railroad v. O'Hara, 59 Ill. App. 649; Andeberg v. Railroad, 98

Ill. App. 207; Railroad v. Kithcart, 79 C. C. A. 150; Donogan v. Railroad, 165 Fed. 869. In States where the doctrine of assumed risk has not been emasculated, by the courts, as it has in Missouri, an employee is held to assume the risk of catching his foot in unblocked switch frogs as a matter of law. York v. Railroad, 86 Ark. 244; Railroad v. Higgins, 90 S. W. Rep. 200; Sheets v. Railroad, 139 Ind. 682; Railroad v. Healey, 108 Ill. App. 531; Donogan v. Railroad, 165 Fed. 869. Plaintiff's evidence wholly failed to show that the defendant's employees in charge of the engine which injured him, could have stopped the engine by the exercise of reasonable care on their part, after his perilous position was discovered, and for this reason, the demurrer should also have been sustained. Boyd v. Railroad, 105 Mo. 371; Tanner v. Railroad, 161 Mo. 497; Watson v. Railroad, 133 Mo. 250. (2) The court erred in giving instruction one on the part of the plaintiff. The first instruction given for the plaintiff, was erroneous in the following particulars: 1st—It assumed that the plaintiff was in the due course of his employment at the time of his injury; 2nd—It assumes that the employees in charge of the engine, by ordinary care, could have prevented the injury to plaintiff, after his danger was discovered, by means of the appliances at hand and, 3rd—This instruction was also erroneous in submitting the legal proposition to the jury that the plaintiff would be entitled to recover unless he assumed the risk of being so injured. None of the instructions define the term of assumed risk but leave this question of law wholly to the jury to figure out.

*Frank P. Walsh, E. R. Morrison* and *James P. Aylward* for respondent.

(1) The decisions of the courts of Illinois were not put in evidence, hence this case is governed by

the common law, which is presumed to be the same in Illinois as in Missouri, and the decisions of the Missouri courts control the case. Tennent v. Ins. Co., 133 Mo. App. 345; Leather Co. v. Ins. Co., 131 Mo. App. 701; McPike v. McPike, 111 Mo. 226; Jordan v. Pence, 123 Mo. App. 324; Houghtaling v. Ball, 19 Mo. 84; 6 Am. & Eng. Ency. Law (2 Ed.), 284; Express Co. v. Owens, 146 Ala. 412; Bank v. Bank, 128 N. Y. 26. (2) Plaintiff was not a fellow-servant of the employees of defendant in charge of the engine. Koerner v. Car Co., 209 Mo. 141; Lanning v. Railroad, 196 Mo. 647; Parker v. Railroad, 109 Mo. 362; Dixon v. Railroad, 109 Mo. 413; Schlereth v. Railroad, 115 Mo. 87; Nordhaus v. Railroad, 242 Ill. 166; Railroad v. O'Brien, 155 Ill. 630; Railroad v. Otstat, 113 Ill. App. 37; Railroad v. Wise, 206 Ill. 453; Railroad v. Kelly, 127 Ill. 637; Hartley v. Railroad, 197 Ill. 440; Lyons v. Rynerson & Son, 242 Ill. 409; Bennett v. Railroad, 243 Ill. 429; Railroad v. Moranda, 93 Ill. 302. (3) The question of assumption of risk of injury by being caught in the switch is not in the case because plaintiff based his right of recovery on the ground that after he was caught his peril was obvious and the engine could have been stopped by the exercise of ordinary care with the means and appliances at hand. Railroad v. Bender, 32 Tex. Civ. App. 568; Foster v. Railroad, 127 Iowa, 84; Moore v. Transit Co., 193 Mo. 411; Cole v. Transit Co., 183 Mo. 81; Deweese v. Min. Co., 128 Mo. 423; Haworth v. Railroad, 94 Mo. App. 215. (4) The engine could have been stopped by the exercise of ordinary care after plaintiff's peril was apparent. (5) Plaintiff's instruction one is not erroneous. Brady v. Railroad, 206 Mo. 509; Jaffi v. Railroad, 205 Mo. 450; Moore v. Transit Co., 193 Mo. 411; Phippin v. Railroad, 196 Mo. 321; O'Connell v. Railroad, 106 Mo. 482.

## STATEMENT BY THE COURT.

The plaintiff was employed as yard clerk at Bixby, Illinois, where defendant's railroad yards contain eleven tracks connected by a "lead" with its main track, which is laid north and south at that station. The yard tracks are on the west side of the main track. On the 17th of July, 1907, plaintiff had been in the employ of defendant two months, his duties being when a north-bound freight train arrived to go on the yard tracks and check and record in a book the number and initials of each car of that train and then return to the office, which stood east of the main track, and get the proper waybills for that train, and from a comparison of them and the notations on his book to make out cards for each car, and to go back into the yards and affix these cards on the cars of that train, beginning at the north end and going south. Plaintiff testified that on the morning of said day after he had finished checking a few cars placed on the repair track, and while he was returning to the office he heard an incoming north-bound train; that he went to the office, got his book, checked and carded that train, after which he heard another "one pull in," whereupon he went again to the office, got his book and returned to the yards and checked this train, and then went to the office to make out proper cards, after which he went back in the yards and carded that last train; but found when he got to the south end that there was one car left over, so he went further south to look up that car and found it and carded it; that he did not remember on which one of the yard tracks this car stood, but knows it was on the west side of the main track at the south end, adding: "Well, when I got through carding that car I went back to the west end to get the footpath, because I could not get through because the cars were all along there. I did not want to climb over

them cars or under them." That his intention was to go back to the office; that while following the footpath he heard a train which got ahead of him about two cars and slowed down; that he walked about twenty-five or thirty-five feet ahead of this train and then attempted to cross the track, when his foot caught right in the switch; that the train was moving about two miles an hour; that he waved his hands and "halloed to the fireman, and halloed and waved his hands." He also stated that it was a clear bright morning; that the engineer and fireman were at their places in the engine which came along and caught his left leg and left arm, throwing him back on his head; that the front part of the engine passed over and severed his two limbs; that his leg was cut entirely off and left in the switch, and his arm left hanging by a little bit of flesh; that he was taken to the office and from there to the hospital in East St. Louis, where amputations were performed the same morning; that he remained there about one month. At the time of the injury he wore a wide leather shoe, the whole of which was caught in the switch. The injury happened about eight feet and two inches in front of the switch board connecting the "lead" from the yard tracks to the main track. The engine of the train was at the time about fifty-two feet north of this switch stand and was drawing thirteen cars loaded with coal. The train was stopped when the plaintiff was between the engine proper and its tender. There was a footboard or platform at the front part of the engine. The plaintiff testifies that he seized this with his arms and tried to pull himself up at the moment the engine came upon him but could not detach his foot. He further testified that he had never ridden on this platform and that he did not throw the switch for this train. There was testimony tending to show that such a train moving at two miles an hour could have been stopped within ten feet. On cross-examination one of defendant's witnesses (Pat-

ton) said that, in reply to an inquiry from some one, the plaintiff at the time of the injury stated "that he did not try to get on the footboard but that his foot was caught." The defendant introduced a number of witnesses who testified that the plaintiff had ridden on the footboard attached to the pilot of this engine from the time the train left one of the yard tracks and was riding on the same when it stopped before entering the main track over the switch where the accident occurred; that when it stopped the plaintiff got off the footboard, went to the switch and threw it open so that the train could come on the main track, and walked back towards the approaching train, and was injured in endeavoring to get on the footboard of the engine by some slip or mishap; and also by a number of witnesses that after the accident occurred, and when the trainmen were getting the plaintiff from the place where he was injured, he stated he did not know how the accident occurred; and by one witness, that the plaintiff stated that he was trying to get on the footboard. The defendant also introduced two statements made by its witness Patton (which it was permitted to do on the ground that his testimony had surprised them) and signed by him contradictory of his statement on cross-examination as to the remark made by plaintiff at the time of the injury, and which further showed that Patton was the switchman on this engine and saw plaintiff throw the switch after alighting from the footboard of the engine, and that he (Patton) gave the signal for the train to go on, in obedience to which it began to move.

Plaintiff alleged as his cause of action, that he was employed by defendant as yard clerk at Bixby, Illinois, and that in the course of his duty he was "passing upon and over certain tracks of the defendant at or near what is known as the main lead at the south end of the yards," and at said point his foot was caught and held in the track so that he was unable to escape,

and was run over by the engine and injured, and that
the agents, servants and employees of defendant in
charge of the engine saw, or by reasonable care and
diligence might have seen, his position of peril on the
track of defendant, and by ordinary care might have
averted any injury, but negligently ran the train upon
his body and injured him, as stated above; and prayed
for judgment in the sum of $35,000. It was stipulated
that there is no fellow-servant statute in Illinois. The
jury returned a verdict for $35,000, from which the de-
fendant has appealed.

The errors assigned relate to the sufficiency of the
petition to state a cause of action; the sufficiency of
the evidence to make a case; the giving and refusing
of instructions; and the amount of the verdict.

## OPINION.

BOND, J. (after stating the facts as above).—I.
If a foreign law is the foundation of a cause of action
or a defense thereto, it must be both pleaded and
proven. On the other hand, if such a law is only evi-
dentiary, it may be proven though not pleaded; but it
must be proven in both cases, for in no other way
can this court apply to it a joinder of issues. The
reason is, that our courts do not take ju-
dicial cognizance of the laws of sister
States or foreign countries when they are
issuable facts in any controversy. In
such cases formal proof must be made
just as of any other fact, and it is immaterial that the
court may be possessed of independent knowledge of
the foreign laws. In the present case there was neither
proof nor pleading of the laws of Illinois other than a
stipulation that there is in that State no statute gov-
erning the relation of fellow-servants; and, hence, in-
ferably, that relation subsists as it did at common
law. But the Illinois decisions declaratory of its com-

Action
Arising
in Another
State.

mon law were not offered in evidence. If that had been done, we should have applied their doctrines to the determination of the relation between the plaintiff and the persons in charge of the freight train. As that was not done, we must apply the common law as it is expounded in this State. For when a question arises as to the non-statutory law of a sister State which has not been proven, and whose territory was a part of that over which the common law of England prevailed, the rule is clear that we will apply our own exposition of that body of law. This will not, however, exclude from our consideration the interpretation of the common law, on points not covered by our own decisions, as it has been made in other States or in England. We may regard these as persuasive authorities depending for their force upon their intrinsic logic. We shall, therefore, consider this appeal from the viewpoint of the Missouri courts in cases to which our statutes abrogating the fellow-servants rule have no application, if it becomes necessary to advert to that doctrine in disposing of this appeal; and we overrule the contention of learned counsel for appellant that, as far as that doctrine is concerned, this case should be determined according to the construction of the Illinois common law as expressed in the decisions of its courts.

II. This case presented "a simple issue as to whether the plaintiff got caught in the switch and was negligently run down by the engine." [Respondent's brief, last paragraph.] As has been seen from the preceding statement, this issue was presented in plaintiff's petition in a form to invoke the application of the last-clear-chance rule, and was submitted to the jury in the following instruction:

**Negligence: Yard Clerk.**

"1. The court instructs the jury that if you believe and find from the evidence that on or about the

17th day of June, 1907, plaintiff was employed by the defendant, St. Louis, Iron Mountain & Southern Railway Company, as yard clerk, and that in the due course of his employment as such yard clerk he was passing over the track of the defendant mentioned in evidence, and that his foot was caught and held in the track at said point, and he was thereupon run over by an engine of said defendant and thereby injured, and that the employees of said defendant in charge of said engine saw, *or by the exercise of reasonable care and diligence might have seen,* the plaintiff in such position upon the track of said defendant at said point, if you so find, in time, by exercise of ordinary care with the means and appliances at hand, to have stopped said engine, and so have prevented said injury to the plaintiff, if any, but negligently and carelessly failed to do so, and that thereby plaintiff was injured, and plaintiff was at the time in the exercise of ordinary care himself, then your verdict should be for the plaintiff, unless you believe and find from the evidence that the plaintiff assumed the risk of being so injured, as submitted to you in the other instructions.''

The giving of this instruction over its objection is one of the errors assigned by appellant. In considering its correctness we will leave out of view for the moment the other points pressed by appellant, that the plaintiff was a fellow-servant of the switching crew in charge of the engine, or that he was injured in consequence of a risk assumed by him when he entered in the employ of defendant, and give our attention to the correctness of the instruction as applicable to the undisputed facts and from the standpoint that the plaintiff was an employee of defendant whose proper work required his presence on its switching grounds and his crossing of the tracks thereon, over which its engines were constantly moving to attach or detach cars and to make up trains. Thus viewed, what was the rela-

tion between the plaintiff and defendant and what obligations did it owe to him?

In the application of the last-clear-chance doctrine a different rule applies when it is invoked by one of the general public for an injury sustained at a place where the railroad had no right to expect "a clear track," and where it is sought to be applied for an injury suffered at a place where a clear track was to be expected or where a workman on the track or grounds of the railroad is injured by the necessary movements of its trains. In the former instance the legal theory expressed in plaintiff's petition and submitted in the above instruction would be correct. In the latter cases it is incorrect. The reason is, that railroads are required to exercise at all times a degree of care and vigilance commensurate with the occasion. This implies a duty on their part correlative with the danger to be encountered. Hence, in passing portions of their tracks subjected to public use or license, they are charged with a knowledge of what is actually seen or what *could be seen* by proper care; but where no such conditions exist or where in the course of the necessary movements of their trains over their tracks or switching grounds a workman or employee is injured through an act of negligence on his part not to be expected, the railroad is not liable therefor, unless he was "actually seen" by its operatives in a position of peril in time, by ordinary care, to stop the train and avoid the injury. This distinction is shown by GRAVES, J., in a recent case, In Banc, upon an analysis of the decisions in this State and elsewhere, and is thus formulated: "The rule as to an employee is different from the rule applied to a passenger or stranger." [Citing Cahill v. Railroad, 205 Mo. l. c. 408; Evans v. Railroad, 178 Mo. l. c. 517; Aerkfetz v. Humphreys, 145 U. S. 1. c. 419.] In that case the plaintiff was a section hand, who was at work upon the defendant's track, and was injured by being run into

by a passenger train without giving him any warning by ringing the bell or blowing the whistle. The court held that he was not entitled to these signals; that the duty attached to his calling to look out for his own protection; and, hence, that the doctrine applicable "to a clear track" measured the liability of defendant, under which rule it did not become liable for the injury unless the servants in control of the engine "actually saw the deceased in a position of peril, of which position he was oblivious, in time to have averted the injury by the exercise of ordinary care." [Degonia v. Railroad, 224 Mo. l. c. 592.] The court further ruled in that case, that the instruction which predicated the right of the widow to recover for the death of her husband, if the defendant's agents "knew, *or by the exercise of reasonable care could have known,* that said Degonia was upon the track," etc., was erroneous; and upon consideration of the entire record reversed the judgment in her favor without remanding. This ruling is conclusive of the present appeal, for there can be no distinction in principle between the relation of the plaintiff, who was a yard clerk employed to traverse all the tracks contained in defendant's switching grounds, and that of the section hand in the Degonia case. The defendant in this case could not be held liable under the last chance doctrine in any other manner than was ruled in the Degonia case. It had the same right here to assume that the yard clerk would look after his own safety that the section man was required to do in the other case. In the case under review the yard clerk had completed his duties, and, according to his own testimony, walked across the track in front of a slowly moving train which he had passed as it slowed up. The physical facts in this case present stronger reasons for the application of the modified rule of the last clear chance to it than was presented in the Degonia case. There the section hand

was at his work and unaware of the on-coming train. Here the plaintiff testified that he had got ahead of the train which had already passed him, and crossed its tracks while he saw it was slowly moving. In the Degonia case, the court said: "Plaintiff's case, therefore, must proceed upon the theory that defendant's servants saw the perilous position of the deceased, and saw such things as would lead prudent persons to believe that deceased was oblivious to such perilous position, and after so seeing had time to obviate and avoid the accident by ordinary care and caution upon their part. It devolved upon the plaintiff to show these facts."

In the case at bar the court instructed the jury that the defendant would be liable if its agents in charge of "said engine saw *or by the exercise of reasonable care and diligence might have seen*" the perilous position of plaintiff. The error of this instruction was the alternative submitted by the phrase "*or by the exercise of reasonable care and diligence might have seen.*" That would have been proper if the plaintiff had been other than an employee of the defendant engaged in work requiring him to cross its switching tracks and to take reasonable care of his own safety in so doing. That the trial judge wholly misconceived the theory on which plaintiff was entitled to recover, if at all, is shown by the further fact that he refused instruction numbered 3 requested by defendant, which submitted its liability under the last-clear-chance doctrine upon the assumption that the switching crew "saw the plaintiff in a position of peril in time to have stopped the engine and prevented the accident, but carelessly and negligently failed to do so." That instruction presented the only legal theory upon which defendant could have been held liable in this action, and should have been given if there was any substantial evidence upon which to base it. [Epp-

stein v. Railroad, 197 Mo. 1. c. 733, par. c; Hufft v. Railroad, 222 Mo. 1. c. 301, par. a.] The evidence for defendant tended to show that neither its fireman, its engineer nor its switchman in charge of the engine ever saw the plaintiff in a *position of peril* until the engine was upon him. The engineer testifies positively he did not see him at all. The switchman states that he never saw him in a *position of peril;* and the fireman, who was on the west side of the engine, after having testified in his direct examination that he saw the whole conduct of the plaintiff in throwing the switch and his return and attempt to mount the platform in front of the pilot of the engine, stated on cross-examination (as noted in the brief of respondent) that the truth was the first time he saw plaintiff "was just as he was falling down." If the statement of these three witnesses is to be credited, then the plaintiff was never seen by any of them *"in a position of peril* at any time prior to the engine reaching his person; and under the rule announced in the Degonia case, the defendant would not be liable in this action. The plaintiff, himself, stated in general terms that the engineer and fireman were at their places. The testimony given for him only tended to show that he was in a position of peril at a sufficient distance from the approaching engine for it to have been stopped and averted the injury. Had he been *actually seen* at that time by the persons in charge of the train, and had they omitted to exercise ordinary care to prevent the injury, then the defendant would have been liable. As to this, the positive testimony of the three men in charge of the engine has been shown. That necessarily does away with any merely disputable presumption that plaintiff was seen in a position of peril, which might have arisen before the advent of that evidence upon his statement that he was within seeing distance. This is a familiar rule of law. [Brown v. Brown, 237 Mo. 1. c. 668; Burge v. Railroad, 244 Mo. 1. c. 94 et seq.]

Its application in this case shows that no ground existed for a recovery.

The judgment is therefore reversed. *Woodson, P. J.,* and *Graves, J.,* concur; *Lamm, J.,* concurs in the result.