JACK R. KELLEY, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Respondent.[*]

St. Louis Court of Appeals. Opinion filed March 2, 1926.

1. **APPELLATE PRACTICE:** Appeal from Order Granting New Trial: Failure to Make Out Case for Jury: Evidence Viewed in Light Most Favorable to Plaintiff. On an appeal from an order granting a new trial on the ground that plaintiff had failed to make out a case for the jury, the appellate court will view the testimony in the light most favorable to plaintiff and allow him every reasonable inference to be drawn therefrom,

2. **RAILROADS**: Negligence: Person Standing Between Tracks: Injured by Object Projecting from Passing Train: Evidence: Case for the Jury. In an action for damages for personal injuries alleged to have been sustained by plaintiff by being struck by something projecting from one of defendant's passenger trains as it passed plaintiff while he was standing between the main line tracks of defendant engaged in surveying, evidence reviewed and *held* sufficient to make out a case for the jury.

*Corpus Juris-Cyc. References; Appeal and Error, 4 C. J., p. 782, n. 44. Railroads, 33 Cyc., p. 900, n. 18.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. George E. Mix,* Judge.

REVERSED AND REMANDED (*with directions*).

*N. Murry Edwards* for appellant.

(1) Defendant's motion for a new trial was sustained upon the ground that the court erred in not giving the demurrer to the evidence at the close of plaintiff's case. The court in passing upon the evidence on demurrer thereto must view the evidence in the most favorable light to plaintiff, and plaintiff is entitled to every reasonable inference of fact which the whole record warrants. Knocke v. Pratt, 187 S. W. 578, 194 Mo. App. 300; Solomon v. Duncan, 185 S. W. 1141, 194 Mo. App. 517; Turnbull v. Dunham, 197 S. W. 1165, 272 Mo. 53; Maginnis v. Missouri Pac. Railroad Co., 187 S. W. 1165, 268 Mo. 667; Peters v. Lusk, 206 S. W. 250, 200 Mo. App. 372. (2) The evidence shows that defendant's tracks and right-of-way near its station were open and unfenced and that there was a footpath where plaintiff was surveying on defendant's tracks; that he was struck and injured by an object protruding about five or six feet beyond the side of defendant's passing train; that plaintiff had been surveying in the place in question for several weeks prior to his injury and his presence up-

on the defendant's tracks was with defendant's knowledge and consent; that the defendant had notice of the object protruding beyond the side of the train before it struck and injured plaintiff, having actually discovered it when the train was a mile and three-quarters away from the plaintiff and although defendant had ample time to have stopped its train and removed this protruding object, it failed to do so. Plaintiff made a case for the jury. Scott v. Davis, 270 S. W. 433; Hicks v. Railroad, 64 Mo. 430; Burns v. Railroad, 176 Mo. App. 330; Thompson v. Railroad, 243 Mo. 336. (3) Where persons are liable to be on a railroad track at a peculiar locality where the train is to pass, if known to the managers of the train, or they have reasonable grounds to expect it, whether such persons are there rightfully or wrongfully, imposes a duty upon the railroad to exercise ordinary care to prevent injuring them. M. Cassida v. Oregon Ry. & Nov. Co., 14 Ore. 55, 13 Pac. 441; St. L. S. W. Ry. Co. v. Wilcox, 57 Tex. App. 3, 121 S. W. 588; St. L. S. W. Co. of Texas v. Balthrop, 167 S. W. 246; Keim v. Gilmore & P. Ry. Co., 23 Idaho, 511, 131 Pac. 656; Grinshaw v. Lakeshore & M. S. R. Co., 205 N. Y. 371; Clampit v. Chicago St. P. & K. C. Ry. Co., 84 Iowa, 74, 50 N. W. 673. (4) Plaintiff was upon defendant's tracks with its knowledge and acquiescence and was not a trespasser but a licensee to whom defendant owed the duty of exercising reasonable care in the management and operation of its train so as to avoid injuring him. Doyle v. Portland Ry. Light & Power Co., 143 Pac. 623; Teakle v. San Pedro L. A. & S. L. R. Co., 32 Utah, 276, 99 Pac. 402; Anderson v. Great Northern Ry. Co., 15 Idaho, 523, 99 S. E. 575; Troy v. Cape Tear & Y. Val. R. Co., 99 N-C, 298, 6 S. E. 77; Byrne v. New York Cent. & H. River R. Co., 104 N. Y. 362, 10 N. E. 539; Davis v. Chicago & New W. Ry. Co., 58 Wis. 646. (5) Where the railroad track by common custom, well established and acquiesced in, has long been used by the public as a footway, the presence of pedestrians thereon is natural-

ly to be expected, and it is the duty of those in charge of trains passing over the track at such places to keep a lookout for them, and the statute which declares those not connected with the railroad to be trespassers if they walk on the track, etc., does not bar a recovery in such case. Murphy v. Railroad, 228 Mo. 56; Ahefeld v. Railroad, 212 Mo. 280, 303; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720; Morgan v. Wabash Ry. Co., 159 Mo. 262. (6) Where there is no actual or constructive notice to the defendant railroad company of an object protruding beyond the side of its train and there is no proof of what struck plaintiff who was walking along the side of the track, he cannot recover. Thompson v. St. L. Southern R. R. Co., 183 S. W. 631. In the case at bar there is ample proof that something protruding several feet from the side of defendant's train struck and injured plaintiff. Defendant had actual notice of the object protruding in ample time to have prevented the injury to plaintiff. (7). The verdict, judgment and the whole record in this case is regular. There is no defect upon the face of the verdict or judgment, therefore, the verdict is not erroneous.

*E. T. Miller* and *A. P. Stewart* for respondent.

(1) The court did not err in granting defendant a new trial on the ground that it had erred in overruling the demurrer to the evidence at the close of plaintiff's case. Plaintiff failed to produce any substantial evidence tending to show either actual or constructive notice upon the part of defendant that a rod or some other appurtenant part of the train was projecting therefrom, and, if such was the fact, that it had been in that condition a sufficient length of time before the accident to have enabled defendant, in the exercise of ordinary care, to have repaired it prior to plaintiff's injury. The demurrer to the evidence should have been sustained, and the action of the trial court in setting aside the ver-

dict and granting defendant a new trial was proper. Thompson v. Railway, — Mo. —, 183 S. W. 631. (2) Notwithstanding the trial court specified only one ground in the order awarding a new trial, defendant is not precluded from showing that a new trial should have been awarded on other grounds assigned in the motion therefor. Emmons v. Quade, 176 Mo. 22, 29; Chandler v. Gloyd, 217 Mo. 394; Millar v. Car Co., 130 Mo. 517. (3) Plaintiff's evidence having failed to make a case for the jury, and the deficiencies therein not being cured by the evidence for defendant, the peremptory instruction requested by defendant at the close of the whole case should have been given, and the court would have been justified in awarding defendant a new trial on this ground. Thompson v. Railway, supra. (4) Instruction No. 1 given for plaintiff is erroneous in that it is not supported by the evidence, and in addition is based on evidence erroneously admitted over defendant's objection. Evans v. Railway, 106 Mo. 594; Paddock v. Somes, 102 Mo. 226; Houser v. Andersch, 61 Mo. App. 15. The trial court would have been justified in awarding defendant a new trial for error in the giving of this instruction. (5) The trial court would have been justified in awarding defendant a new trial because of error in refusing to give defendant's requested instructions Nos. 3, 4, 5, 6 and 7. These were withdrawal instructions, intended to eliminate from the consideration of the jury assignments of negligence which were without support in the evidence, and should have been given. Chrismer v. Tel. Co., 194 Mo. 189; DeWolf v. Dry Goods Co., — Mo. App. —, 240 S. W. 1094.

BECKER, J.—Plaintiff recovered judgment against the defendant for $1500 in an action for damages for personal injuries alleged to have been sustained by plaintiff being struck by something projecting from one of defendant's passenger trains as it passed plaintiff while standing between the main line tracks of the defendant, engaged in surveying. The trial court sustained

defendant's motion for a new trial on the ground that it had erred in overruling the demurrer to the evidence interposed by defendant at the close of plaintiff's case. In due course the plaintiff appeals from the order granting a new trial.

Plaintiff's petition contains five assignments of negligence. The case as submitted to the jury was predicated only on two thereof, which are as follows:

"First. That defendant knew of, or by the exercise of ordinary care could have known, that plaintiff was standing at or near said eastbound track and negligently caused, suffered and permitted a rod or other object to project out from said train while passing plaintiff, which defendant knew, or by the exercise of ordinary care could have known, was liable to strike and injure plaintiff."

"Fifth. That defendant failed to stop said train when signaled to stop by its employees before passing plaintiff when the employees in charge of said train were signaled to stop, and could have, by the exercise of ordinary care and with the means and appliances at hand and with safety to defendant's employees and the passengers of the train, stopped the train or checked the speed and prevented injuring plaintiff."

The defendant's answer was a general denial and a plea of contributory negligence.

The reply was conventional.

Since plaintiff, appellant here, urges as his principal assignment of error that the action of the trial court in granting defendant a new trial on the ground that plaintiff had failed to make out a case for the jury, and we have come to the conclusion, after full consideration of the record in the case, that the point is well taken, we set out the testimony which we hold sustains our view.

The evidence shows that plaintiff had been working for the city of St. Louis as a civil engineer for about two years prior to his injury; that the defendant maintained

a passenger station at Lindenwood near the city limits of St. Louis and owned and operated a double line of railroad tracks at said Lindenwood Station, which tracks run in a northeastwardly and southwestwardly direction; that there was a ten or twelve foot space between the inside rails of the inbound and outbound tracks; that there was a foot path in this space between the tracks at the place where plaintiff was injured which was used by the people of south Lindenwood; that the tracks and right-of-way of defendant at the place in question, were open and unfenced; that plaintiff had been surveying on and around defendant's tracks for the city of St. Louis continuously for about three weeks prior to his injuries; that the defendant knew of this and had often operated trains over these tracks and by the place where plaintiff was surveying while he had his tripod set up between the inside rails of the outbound and inbound tracks as he did on the day in question.

It was admitted by the defendant at the trial that the plaintiff had a right to be upon the tracks as a licensee and that his presence there, on defendant's tracks, was known to defendant.

Plaintiff testified that on the day he was injured he and his crew were surveying on the defendant's tracks about 400 or 500 feet southwest of Lindenwood Station; that he had set up his tripod at a place between the inside rails of the outbound and inbound tracks of the defendant; that after surveying at this point for about thirty minutes or more and at about 11:30 in the morning he was approached by the defendant's passenger train which train was on the east or inbound tracks; that when he saw the train coming he stopped surveying, took hold of his tripod to steady it and stood between the tracks a little to the north of the center of the space between the inside rails of the tracks; that he had done this many times before; that while he was standing in this position, the engine, tender and one or more of the passenger coaches passed him and suddenly something struck plain-

tiff on the calf of the right leg, knocking him down and causing the injury complained of; that whatever it was also struck his tripod and broke one of the legs and struck and broke a stationary signal case of the defendant thirty feet east of plaintiff; that this signal case was about a foot and one-half high and stationed in the center of the space between the inside rails of the outbound and inbound tracks. Plaintiff testified that the reason he did not remove his tripod before the train passed him was because he could not again take up his work where he left off and would have to do all of that day's surveying over again.

William J. Peters testified on behalf of the plaintiff that he was a member of the surveying crew of the plaintiff as a rod man; that he saw plaintiff get hurt on the day in question; that he was standing about 300 feet northeast of plaintiff on defendant's switch tracks; that he saw the train approaching about a mile away; that he saw some object swinging out from about the  middle of the north side of the train before it passed plaintiff; that this object when he first saw it, was about fifty feet west of plaintiff and when it got to him he took a couple of somersaults.

Roby L. Smith testified on behalf of plaintiff that he was employed by the defendant as a signal maintainer which position he had held with the defendant for twelve years; that his duties were to take care of the automatic block signals, the interlocking plant and crossing bells; that he looked after defendant's tracks between Spring avenue and Glendale, Missouri; that Lindenwood and Old Orchard Stations were in his territory.

The witness testified that it was his duty to signal trains to stop when he saw something wrong. His testimony on this point is as follows:

"Q. Now, have you also a duty, if you see anything wrong with the train, to flag it down—if you see anything wrong with the train—is that within your duties to signal the train? A. Yes, sir."

"Q.  To stop it?  A.  Yes, sir."

The witness stated that he kept his supplies at his headquarters at Old Orchard; that the defendant maintained a stationary signal about 400 feet west of Lindenwood Station which he had charge of; that this signal was about two and one-half feet high and stationed in the center of the space between the rails of the inbound and outbound tracks; that he found this stationary signal case broken about 2:30 or 3:00 o'clock on the day plaintiff was injured; that he didn't think that it was over a day before he found the signal broken since he had last seen it.

Witness Smith further testified that on the morning plaintiff was injured defendant's train No. 2 passed him about one and three-quarter miles southwest of where plaintiff was injured; that when he first saw the train coming he was on the south side of the track and crossed over to the north side ahead of the train and stood in the center of the westbound track and about fifteen feet from the train.  He further testified that he saw something kicking up the dust along the north side of the train about the middle and he signaled the train to stop.  His testimony on this point is as follows:

"Q.  Well, did you notice anything kicking up the dust along the north side?  A.  Yes."

"Q.  And what part of the train was this object that was kicking up the dust that you noticed; middle, center or front?  A.  About the middle."

"Q.  And about how long a train was that; how many cars, approximately?  A.  About seven cars, I guess."

"Q.  Now, when you saw *this object kicking up* the dust along the north side, what did you do?  A.  Well, of course, I tried to flag it."

"Q.  Well, what did you do when you tried to flag it?  A.  Well, I gave them the stop signal, like this (indicating)."

"Q. Will you just stand up, Mr. Smith, and show the jury just how you give that? A. Well, I give him the stop signal like this, you see (indicates)."

"Q. And is that called the washout signal? A. I have heard it called the washout signal."

"Q. That is the slang word for it, is it not, the washout signal? A. Yes, sir."

"Q. Did you ever give such a signal as you have just described to the jury, to a moving train and stop it, for the defendant? A. Yes, sir."

"Q. Now, did you keep giving this signal—continue to give this signal until the train got out of your sight, just kept on giving it, did you? A. No, sir."

"Q. You didn't do that? A. No, sir."

"Q. How many times did you give that signal? A. I didn't count them; I gave it as long as I thought there was any use."

"Q. Well, how far had the train gotten beyond you when you quit giving the signal? A. About two train lengths, I guess, or two and a half train lengths."

"Q. Now, did you see anybody on that train that you were giving these signals to, that you have just described? A. Yes, sir."

"Q. And where was this party that you saw on the train when you were giving these signals to it? A. On the back platform."

"Q. Was he standing or sitting? A. Standing."

The witness further testified that he knew it was customary for the defendant to keep a flagman on the back of its trains such as train No. 2.

On cross-examination the witness testified in regard to the object kicking up the dust along the north side of the train as follows:

"Q. And about the time that the rear end of the train passed you, then you saw this dust being kicked up, is that correct? A. Somewhere along in there about that time."

"Q. And whereabouts was that with reference to the front end or the rear end or the middle of the train? A. Well, I should judge it was along about the middle of the train."

"Q. The train then went on east? A. Yes, sir."

"Q. And you don't know what it was kicked up the dust do you? A. No, sir."

"Q. How long did that train remain in your sight? A. About half or a quarter of a mile—we will say a quarter of a mile." . . .

"Q. You didn't see anything projecting from that train, did you? A. No, sir."

Albert John Adams testified on behalf of plaintiff that he was and had been a brakeman for the defendant for about thirteen years; that he was working on the defendant's passenger train No. 2 as a rear brakeman on August 24, 1923, the day the plaintiff was injured, and was standing on the rear platform of the train when it passed Old Orchard where he saw Roby L. Smith, whom he knew to be a signal man in the employ of the defendant, give him some kind of a signal which he took to be just a friendly signal and answered it with the same kind of a signal; that he was about 250 feet away from Smith when Smith gave him the signal.

The witness stated that although he thought Smith only gave him a friendly signal, he immediately looked out on the north side of the train to see what was wrong. His testimony on this is as follows:

"Q. At any time after this train had passed the point where you saw Mr. Smith, did you look out towards the head end, along the north side of the train? A. After it got around the curve, the window was open on the inside and I looked out to see if there was anything dragging along the train, or hot boxes."

"Q. That was immediately after you passed the point where you saw Mr. Smith standing? A. Yes, sir."

"Q. And you looked toward the head end of the train, on the north side? A. Yes, sir."

"Q. Did you see any dust being kicked up at that time? A. No, no dust at all."

The witness stated that when he got to Union Station he again inspected the north side of the train and found nothing wrong; that he found nothing loose, broken or projecting out from the train.

On re-direct examination the witness stated that his examination of the train at Union Station was out of the ordinary; that he made this examination because he "wanted to see what caused any scratches on the train."

Ernest T. White testified on behalf of the plaintiff that he was working for the defendant as a locomotive fireman and had been in the employ of the defendant as a fireman for fifteen years; that on August 24, 1923, he was fireman on train No. 2, the train in question; that he saw somebody with a tripod west of Lindenwood Station on the morning plaintiff was injured; that the railroad track is straight for about a half mile southwest of Lindenwood; that he could see this man surveying a half mile away; that Old Orchard Station is about a mile and a half west of where he saw this man surveying; that the train was running about thirty-five miles an hour when he passed the man standing beside the tripod and was going about the same speed when he passed Old Orchard Station; that with the train and brakes and everything in the condition it was on the morning in question, with safety to the employees and to the passengers of the train, he could have stopped the train going thirty-five miles an hour in a little over a quarter of a mile.

Defendant, respondent here, urges that the evidence wholly failed to disclose what it was that struck plaintiff, or if it was a rod or other object projecting from the train, that it had been in this condition a sufficient length of time before the accident to have enabled defendant, in the exercise of ordinary care, to have repaired it before plaintiff was injured.

Defendant in its written argument in support of this contention states that it, "is willing to rest this case, and the ruling of the trial court in sustaining defendant's motion for new trial on the ground that it had erred in overruling the demurrer to plaintiff's evidence, on the decision of the Supreme Court of Missouri in the case of Thompson v. Railroad Co., 183 S. W. 631."

A reading of the Thompson case readily discloses that it is distinguishable from the instant case on facts. Plaintiff's judgment in that case was reversed outright, the court ruling that, "the plaintiff has signally failed to produce any substantial evidence tending to show either actual or constructive notice on the part of the defendant that a car door in said train was loose and swinging—if such was the fact—and that it had been in this condition a sufficient length of time before the accident to have enabled defendant, in the exercise of ordinary care, to have repaired the same prior to plaintiff's injury. In view of the positive and undisputed evidence upon the subject of inspection, the plaintiff has failed to establish his cause of action. [Rashall v. Railroad Co., 249 Mo. l. c. 521-22, 155 S. W. 426.]"

In the case before us, viewing the testimony from the record which we have set out above in the light most favorable to plaintiff and allowing him every reasonable inference to be drawn therefrom, we must rule that plaintiff made out a case for the jury.

There was evidence from which the jury could readily infer that plaintiff was struck down by some object that projected from one of the cars in defendant's train. Plaintiff's witness, William J. Peters, testified that as the train approached the plaintiff he saw on the "second to the last coach near the end, there was something flinging out; I couldn't detect exactly what it was, whether it was wood, iron or rubber, but it was something that had just come out and come back in, like, and it swung out about the second to the last coach." And that the witness

then saw "Kelley take about two or three somersaults and I thought he was cut in two."

On cross-examination this witness was asked:

"Q. Now, when was it you saw this object swinging out? A. Well, just prior—I guess about in the neighborhood of about fifty or seventy-five feet—I could see something come out." . . .

It further appears from the testimony which we have set out above that the jury could readily conclude that the plaintiff stood absolutely in the clear of the locomotive and the cars, and it is a fair inference that whatever struck down plaintiff also struck and broke off the signal light which was standing directly in the center of the two sets of tracks some thirty feet east of where plaintiff was standing.

Then also witness Smith, a signal maintenance man employed by defendant, testified that immediately after the train passed him he saw dust being kicked up. He was asked:

"Q. Well, did you notice *anything* kicking up the dust along the north side? A. Yes."

"Q. And what part of the train *was this object* that was kicking up the dust that you noticed; middle, center or front? A. About the middle."

"Q. And about how long a train was that; how many cars, approximately? A. About seven cars, I guess."

"Q. Now, when you saw *this object kicking* up the dust along the north side, what did you do? A. *Well, of course, I tried to flag it.*"

"Q. Well, what did you do when you tried to flag it? A. Well, I gave them the stop signal, like this (indicating)."

And witness Albert John Adams, brakeman for the defendant company, testified that he was on the train in question and stood on the back platform and saw Smith, the signal maintenance man on the tracks a mile and three-quarters or more from the place where plaintiff met with the accident; that he saw Smith give a signal which he in turn acknowledged by like signal; that he

thought Smith was merely giving him a friendly salute, yet this same witness testified that immediately after seeing Smith's signal, as the train was rounding a curve, he looked out of an open window of one of the cars on the north side of the train and looked to the front end thereof to see if anything was wrong, "to see if there was anything dragging along the train or hot boxes," but that he did not see anything dragging on that side of the train.

There was no contention but that the place at which Smith saw dust being kicked up was at least a mile and three-quarters from where the plaintiff met with his injuries and that the train was running at thirty-five miles per hour and could have been stopped within approximately one-quarter mile.

In light of the testimony we have set out above we rule that plaintiff made out a case for the jury. [See Scott v. Davis, (Mo. App.), 270 S. W. 433; Burns v. United Rys. Co., 176 Mo. App. 330, 158 S. W. 394.]

We have examined the other grounds here urged by defendant as errors for which the trial court below could properly have granted defendant a new trial and find them to be without merit. It is true that plaintiff's instruction numbered one is subject to some criticism. However a careful analysis thereof shows that no error prejudicial to the defendant appears therein. The instructions when taken together fairly presented the case to the jury, in fact were favorable to the defendant and upon the whole record the verdict of the jury was for the right party.

It follows from what we have ruled above that the trial court erred in sustaining defendant's motion for a new trial and defendant's motion in arrest of judgment. It follows that the order of the trial court granting defendant a new trial and sustaining defendant's motion in arrest of judgment must be reversed and the cause remanded with directions to reinstate the verdict of the jury as of the date the same was rendered and to render judgment thereon. *Daues, P. J.,* and *Nipper, J.,* concur.