ANNA DETMERING, ADMX., RESPONDENT, v. ST. LOUIS-SAN FRAN-
CISCO RAILWAY COMPANY, APPELLANT.*—36 S. W. (2d) 112.

Kansas City Court of Appeals. February 16, 1931.

*Trusty & Pugh* and *John F. Cook* for respondent.

*E. T. Miller, Conrad & Durham* and *Hale Houts* for appellant.

ARNOLD, J.—This is an action in damages for the death of one
George Detmering, a section laborer in the employ of defendant,
a railroad company engaged in interstate traffic. Plaintiff is his
widow and sues as administratrix of his estate, under the Federal
Employers' Liability Act.

At the time of his death, Detmering, with other members of a
track crew, was engaged in reconstructing cattle guards at a high-
way crossing on defendant's main line just south of the town of
Fontana, Kansas, under direction of one Leonard T. Arnett, fore-
man of the crew. The record shows Detmering had been engaged

as track laborer in the employ of defendant for a period of nine years next preceding his death which occurred on February 28, 1927, at about 2:40 to 2:45 o'clock P. M., of that day, when he was struck and killed, on defendant's main line track, by a northbound passenger train traveling at a speed of thirty to thirty-five miles per hour. At the place of the accident defendant's main line track runs in a southeast-northwest direction. About 1200 feet southeast of the point of the accident the track comes on a curve out of a cut. During the time a train was running through this cut, it was not always in view. At the point where the accident occurred there was the main line track with a passing track on each side thereof. Deceased was working on the east, or northeast, side of the main line track and between it and the southwest rail of the northeast passing track, astraddle of, and engaged in adzing off the top of a tie, with his heels about ten inches northeast of the northeast rail of the main track. The other members of the crew, including the foreman, were in the immediate vicinity, within a few feet of each other and to the southwest of decedent. The train which struck decedent approached from the southeast and while it was in the cut, the whistle sounded. It is in evidence that the whistle was sounded for the station at Fontana and again as an alarm when the engine was within about fifty feet of decedent. All other members of the crew, including the foreman, stepped to the southwest of the main line track in the clear of the passing train but decedent continued at work, in a stooping position, his right side toward the train until it was within a few feet of him, when he started across the main line track to the southwest and was struck. His body was thrown southwest of the main line track and from the injuries sustained, he subsequently died.

It is in evidence that decedent was not warned by the foreman or other members of the track crew either of the approach of the train or of its proximity. The day was clear and there was an unobstructed view of the track for a distance of approximately 1200 to 1600 feet to the southeast. It was a regular scheduled passenger train and was running on time.

The petition is formal, alleging plaintiff's due appointment as administratrix of decedent's estate; that plaintiff is the widow of decedent; that defendant is an interstate common carrier and that plaintiff's husband was employed by such carrier in interstate commerce; that on February 28, 1927, while plaintiff's husband was in the employ of defendant and within the scope of his employment "under the direct orders and directions of his foreman and defendant's servants and engaged with other employees in working upon the tracks of the defendant about one mile south of Fontana, Kansas," and while plaintiff's husband was engaged in what was commonly known as section work, defendant, its agents and servants, caused

a passenger train to run northbound over the track where plaintiffs said husband was working, striking him down and injuring him so as to cause his death. The charge of negligence is as follows:

"At said time and place the defendant was guilty of negligence in that it was a custom of defendant's track foreman upon which the plaintiff's husband and other employees relied to warn employees and others similarly situated as track workers of the approach of any engines or trains and warned the men to get out of the way in time to escape being struck thereby, but in this instance no warning of approach of said train was given by said foreman, or warning to leave the track.

"Defendant was further negligent in that the agents and servants of the defendant operating said train failed to have said train under reasonable control and negligently failed to maintain any or a reasonably sufficient lookout at said time and place for employees on said track, or so near thereto as to be in danger of being struck thereby, although defendant knew, or should have known, of the presence of plaintiff at said time and place.

"Defendant was further guilty of negligence in that the defendant's agents and employees knew that plaintiff and other employees were customarily upon said tracks and so near thereto as to be struck by cars traveling upon and over the same and that they needed and relied upon warning of the approach of trains and it was usual and customary to give reasonable warning of same, yet defendant negligently failed to give any warning of the approach of the engine and trains that struck and injured plaintiff's husband.

"Defendant was guilty of negligence in that plaintiff's husband was in a position of peril from the approach of said train and was unaware thereof in time to escape therefrom, by the exercise of ordinary care on his part, and defendant knew of such peril of plaintiff and yet drove said train forward when by the exercise of ordinary care and with the means at its command defendant could have safely slackened the speed of said train, or stopped the same, or given warning of the movement of said train before said train struck plaintiff's husband and so as to enable plaintiff's husband to escape being struck by it, and yet defendant negligently failed to do any of said things."

The petition alleges plaintiff's husband was an able-bodied man, capable of earning about $100 per month, and that he left surviving him the plaintiff and a minor daughter nineteen years of age; that before his death he endured intense pain and suffering. Judgment is sought in the sum of $20,000.

The answer is, first, a general denial, and as affirmative defense pleads contributory negligence in that decedent failed to keep a

lookout for trains, failed to assure himself that no train was approaching, or failed to get out of the way of the train "which he knew or by experience and ordinary care could have known was approaching." There is also a plea of assumption of risk.

Upon the pleadings thus constituted the cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $12,500, and judgment was accordingly entered. Motions for a new trial and in arrest of judgment were duly filed.

In consideration of the motion for a new trial, the court required a *remittitur* of $6,000 from the amount of the verdict and judgment. The *remittitur* was made and judgment entered in plaintiff's favor for $6,597.50, which included interest. The motions for a new trial and in arrest were then overruled. Defendant has duly appealed.

Defendant contends the trial court should have directed a verdict in its favor because, as a matter of law, no liability on defendant's part was shown. Defendant also complains of the instructions and of the amount of the judgment finally entered.

Eleven assignments of error are presented, and argued under six headings, the first being that the court erred in not directing a verdict for defendant. This charge is treated under three subheadings: (a) In order to recover it was necessary for plaintiff to establish a custom for the foreman to look out for, and warn the other men; (b) there was no substantial evidence of any custom upon which deceased had a right to rely, for the foreman to warn the section laborers; (c) even assuming the existence of such a custom as was alleged, it was a matter of pure speculation and conjecture whether the death of deceased was caused by a violation of the custom; the only inference supported by the evidence was that the sole cause of the death was decedent's own negligence.

It is argued plaintiff's evidence was directed to the allegations of a custom on behalf of the foreman to warn; that the allegations of the petition which plaintiff attempted to submit were those in respect to the custom of the foreman to warn, and the humanitarian doctrine; that instruction P-1 submitted the alleged custom and also submitted recovery upon the humanitarian doctrine, to-wit, that the foreman negligently failed to warn decedent after discovery of his peril. It is also pointed out that instruction P-3, proceeded upon the last named theory solely, and was refused by the court as offered. Plaintiff also requested instruction P-7, based upon the theory that the engineer saw, or by the exercise of ordinary care could have seen plaintiff in a position of peril in time to have averted the accident, and this also was refused. It is urged the humanitarian doctrine was not pleaded other than as to a failure to avert the accident after actual discovery of plaintiff's peril; that, as a matter of law, there was no duty on the part of the trainmen to keep a lookout for trackmen, absent a custom duly pleaded

and proved; that instruction P-7, therefore, was properly refused, not being within the evidence insofar as it proceeded upon the theory that the engineer could have discovered decedent's peril, although he did not discover it. It is urged recovery cannot be had upon theories which are not within both the pleadings and the evidence. [Degonia v. Railroad, 224 Mo. 564, 123 S. W. 807; State ex rel. v. Ellison et al., 270 Mo. 645, 653, 195 S. W. 722; Kitchen v. Mfg. Co., 20 S. W. (2d) 676, 682.]

It is argued the portion of instruction P-1 which proceeded upon the theory that the section foreman actually discovered decedent's peril in time to have averted the accident, was not warranted; that the evidence shows decedent was not seen in a position of peril by the foreman, in fact, was not seen until he was actually struck; and was not seen in a position of peril by the foreman, or by the engineer until too late to avert the accident. [Citing Rashall v. Railroad, 249 Mo. 509, 522, 155 S. W. 426; Voorhees v. Railway, 30 S. W. (2d) 22.] Upon this basis, defendant, under subdivision (B) of the assignment, proceeds to argue that there was no substantial evidence of any custom upon which deceased had a right to rely, as to the alleged duty of the foreman to warn; that plaintiff is without right to rely upon the alleged custom for the foreman to warn when, under what is known as "the trackman's rule," a trackman must look out for his own safety from injury from regular trains running on time. Plaintiff declares defendant waived this point by its failure to offer a special demurrer or a withdrawal instruction touching plaintiff's theory that there was in force at the time of the accident a custom to look out for and warn the men of approaching trains in time for them to get out of the way, and that failure to observe the custom was the cause of the death of Detmering; but, on the contrary, defendant permitted the jury to find from the evidence that there was such a custom by its instruction D-11, which was given, as follows:

"The court instructs the jury that it is the law that a trackman must look out for his own safety as against regular trains running on schedule; unless there prevails a custom or practice meeting the requirements of the law contrary thereto."

Plaintiff points out that the only other instruction offered by defendant touching this matter was D-2, which the court refused, and which reads as follows:

"The court instructs the jury that the evidence fails to disclose that at the time plaintiff was employed by the defendant as a trackman, there was a custom whereby the foreman would notify trackmen of the approach of regular trains running on schedule time and that said contract of employment was made in reference thereto and for that reason in determining the issues of this case you will disregard any custom, if any, shown by the evidence."

The trial court's ruling doubtless was based upon the fact that the instruction limited the operation of the custom to "the time plaintiff was employed" and that said contract of employment was made relative thereto. The petition limited the operation of the custom to the time of the accident. Defendant, in its reply brief, counters by urging there was no need for a specific withdrawal or peremptory instruction in respect to the custom since this was the only ground of negligence which the plaintiff attempted to prove; that under such circumstances the general demurrer was sufficient. In Torrance v. Pryor, 210 S. W. 430, the Supreme Court in an opinion by GRAVES, J., seems to have determined this point against defendant's contention. The court there held, in effect, in an action for personal injuries, that a defendant having asked and received an instruction upon the humanitarian doctrine is estopped to allege error in the giving of an instruction for plaintiff on the same theory, where the demurrer to the evidence did not specifically challenge the evidence under such theory. The opinion in the Torrance case discusses a situation substantially parallel to the one here presented and states that had the demurrer been a specific one, challenging the sufficiency of the evidence to support the humanitarian theory of the case, and such demurrer overruled, there could be no question but the defendant could urge his demurrer on appeal, for the reason that, after he had made his point clear, he is not estopped by the theory contained in his other instructions, which was forced upon him by the action of the court. The court said (l. c. 433):

"To illustrate, if plaintiff's case is founded upon several alleged acts of negligence, and defendant, by demurrer, challenges the sufficiency of the evidence as to one of the grounds of negligence, it should not be said that he is precluded from asking instructions on the theory adopted by the court in overruling the demurrer. To so hold would force the defendant to stand upon his demurrer before the jury. But the supposed case is not this case. Here the demurrer challenged the whole case, and the evidence upon all of the several alleged grounds of negligence. In overruling such a demurrer, the court does not indicate its theory upon any particular ground of negligence. In such case, it is sufficient for the trial court to find (in his own mind) that the evidence does sustain one or more of the alleged grounds of negligence. Nor does such a general demurrer call upon the court to indicate the ground in mind. So that, when this general demurrer was overruled in this case, the defendant was in no position to say that the court, in overruling it, has said that violation of the humanitarian rule is in the case, and the defendant thereby authorized to ask instructions thereon perforce of the ruling of the court. Under the status we have in this case, we should, and do, rule that defendant having asked and received an instruction upon the humanitarian doctrine,

cannot now plead error upon the part of the trial court in giving one for plaintiff on the same theory.''

To the same effect are the holdings in Baker v. Wagner Elec. Co., 270 S. W. 302; Oberdan v. Evens & Howard Fire Brick Co., 296 S. W. 161. We must hold defendant is estopped to deny the humanitarian theory is in the case, and a review on that point is not necessary.

Under subdivision (b) of point 1, defendant insists there was not sufficient substantial evidence to support the verdict as to the negligent violation by defendant of the custom for the section foreman to warn the men of approaching trains in time for them to get out of the way before being struck by such train; that proof of the existence of such a custom is insufficient. This charge necessitates some inquiry into the evidence. It appears, as above stated, that decedent had been in the employ of defendant as a trackman for nine years preceding his death and at the time he was first employed, the custom in question was not followed. But there is evidence that about three years prior to the death of Detmering the foreman, Arnett, had told the men in his section gang, including decedent, that he would warn them of the approach of trains; that he told them he had orders to get the men in the clear of passing trains; that it was and had been the practice of the foreman of the track crew to warn the men of the approach of trains. The foregoing was the purport of the testimony of plaintiff's witness Fred Flook, a trackman employed in the same crew. This evidence was sufficiently substantial to take the case to the jury on the question of a custom of the foreman to warn.

The testimony shows that decedent remained at his work until too late to get out of the way of the train; that the foreman, Arnett, gave decedent no warning although he is shown to have been within speaking distance. Plaintiff's witnesses testified to the existence of a general custom to warn the men, by the foreman of the section gang. Defendant insists that, upon cross-examination, these witnesses so stated the details of the work and practice of the foreman and men as clearly to negative the existence of any such general custom. Defendant argues that for a custom to be relied upon it was necessary (1) for the foreman to be present, (2) the crew to be together, (3) the foreman to be in a position to warn and (4) that it be a ''close place.'' The testimony was such the jury might well conclude all these elements were met. The men were employed in repairing a cattle guard, or cattle guards, and were within a few feet of each other and of the foreman; and the foreman was in position to warn them. As to the fourth element there was evidence that there was a hole or declivity in the cattle guard on the northeast side of the main line track, within the limits of the passing track. The testimony would seem to indicate, and the jury

might well conclude, that a step or two in that direction by decedent was not practical; and that he was not guilty of contributory negligence in attempting to cross to the southwest side of the track where, in so doing, he was struck by the train. We have no hesitancy in saying the evidence was of sufficient substantiality to take the case to the jury. We have examined defendant's citations on this point and find them not contrary to the above ruling.

Defendant insists the Federal decisions are controlling. Plaintiff does not refute this, but points out the Federal rule and the Missouri rule are the same, and this we find to be true. Therefore an analysis of the cases cited would seem to be unnecessary here.

Under Point 2, defendant charges the court erred in giving instruction P-1, in that (1) the evidence did not show the existence of a custom of the foreman to warn. We have already determined this point against defendant. (2) That paragraph 2 of the instruction erroneously authorized the jury to find the foreman knew of the position or location of Detmering. We hold the instruction not erroneous in this respect. The testimony of the foreman Arnett would seem to settle this point against defendant. He was asked: "Well, now, just before that accident now did you see Mr. Detmering working there? A. Yes, sir."

It is charged the instruction was erroneous for the further reason that it authorized the jury to find decedent was working under orders and directions of the foreman. Such authorization must be held to conform to the pleadings and proof, and is not error. That was the allegation and there was proof in support thereof. Whether this proof was sufficient was a question for the jury. The jury might well conclude and find under the instruction that the crew were doing the work the foreman told them to do. The plain language and meaning of the instruction must be adopted. Instruction P-1 is rather lengthy, and we do not deem it necessary to set it out in full. It is sufficient to say it correctly states the law, and is not erroneous in the respects charged. Defendant argues the instruction authorizes the jury to find decedent was working under orders of the foreman and that the foreman ordered him specifically to do work in a position of peril. We hold the instruction not subject to such construction.

Defendant attacks instruction P-2, upon the grounds that it assumes plaintiff and their daughter and beneficiaries generally were entitled to some damages, and that, in effect, it gave the jury to understand the amount of recovery was the only issue involved; that plaintiff was entitled to some damages regardless of liability. The instruction will not be here set out, but our attention is specially directed by plaintiff to the last part of the first paragraph thereof which predicates liability for any damages whatever upon the fact the jury must first find for plaintiff, and find all

the facts and conditions to be as set forth in instruction P-1, which required a finding of all the requisite elements for recovery. The instruction does not offend in the manner charged.

Instruction P-3 as given, is as follows:

"If you find from the evidence the facts and conditions to be as set forth in instruction P-1 and further find from the evidence that Detmering discovered the approach of the train before he was struck and that when he did so the conditions were such that would cause him to become frightened and that he did become frightened by reason thereof, if so, then you are instructed that his conduct from then on must be measured by what might reasonably be expected of an ordinarily prudent person under the same or similar circumstances."

It is urged this instruction erroneously authorized the jury to absolve decedent of negligence or minimize the same on the theory that after he discovered the train he thereafter acted in an emergency, although his own negligence caused or contributed to cause the emergency and the instruction did not require the jury to find that his negligence did not cause or contribute to the emergency. Defendant contends the instruction invokes the rule that one who acts in an emergency is not expected, or required, to act with the same deliberation, care or foresight as persons who have time to reflect and deliberately determine what is necessary to be done in order to protect themselves from danger. We think the instruction, standing alone, does invoke the rule above referred to. But taken in connection with instruction P-1, it properly does so, for, if the jury found the facts to be as stated in instruction P-1, then decedent is not guilty of contributory negligence prior to the arising of the emergency.

Under point 5, defendant insists the court erred in refusing defendants instructions D-1, D-2, D-3 and D-4. While asserting error in the refusal of these instructions, defendant fails to follow up the charge and point out wherein the court erred in such refusal, except to state the instructions were correct and to cite "authorities under point 1, supra." This is not a proper assignment of error and we consider the objections waived.

Finally, it is charged the judgment is excessive, and in this connection, defendant urges decedent was sixty-five years of age at the time of his death; that he was earning $60 to $70 per month, and that his expectancy was eleven years; that the value of an annuity in his favor, under sections 7547 and 7549, Revised Statutes 1919, was $7281; giving him full benefit of the evidence, that is, a wage of $70 per month, his annual wage was $840; that the maximum value of a normal expectancy of the average man would have been something under $6200.

Defendant in its calculation would charge against this $20 per month for personal needs of deceased; and while it is shown deceased provided for his wife and daughter, yet the daughter in two years attained her majority and decedent would have devoted more money to himself; that a deduction from the annual income of $20 for decedent's personal wants would reduce the value of a normal expectancy to $4,400; that decedent's expectancy was less than normal because of his occupation. From this it is urged if plaintiff is entitled to recover at all, any amount over $2,000 is excessive.

As already stated the original verdict was for $12,500, and judgment for that amount was entered, but the requirement *remittitur* reduced this to $6,500. It is the rule, recognized by all courts, that the question of the amount of damage is peculiarly in the hands of the jury, and appellate courts should not interfere unless the record discloses the verdict is so large that it is clearly unfair and unreasonable. [Becker v. Koester, 295 S. W. 818.] The testimony shows decedent was young looking for a man of his years, and that he was in good health and form. Under the circumstances we do not feel the judgment should be reduced, since the trial judge who heard the evidence saw fit to reduce the verdict by almost half.

Finding no reversible error, the judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.